OPINION
{¶ 1} William E. Cameron, plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court, upon remand from the decision of this court in Cameron v. Cameron, Franklin App. No. 04AP-687, 2005-Ohio-2435, sustained in part and overruled in part the objections to the magistrate's decision filed by M. Jennifer Cameron (k.n.a., Jennifer Lukas-Earl), defendant-appellee. *Page 2 
 {¶ 2} The parties were married on September 12, 1992, and were divorced on March 15, 2001. The parties have two minor children, who were born during the marriage. Pursuant to a shared parenting plan adopted by the court, William was designated the residential parent for school placement purposes, no child support was to be paid by either parent, William was to pay all work-related child care costs for the children and would maintain health insurance coverage for the children, and William was to pay 70 percent of all uninsured health care costs.
 {¶ 3} On August 22, 2002, Jennifer filed a motion for reallocation of parental rights and responsibilities, requesting that William pay child support to her and pay her attorney fees. On January 14, 2004, the magistrate issued a decision recommending that Jennifer's motion be denied. Jennifer filed objections to the magistrate's decision. On June 18, 2004, the court issued a judgment entry, in which it sustained in part and overruled in part Jennifer's objections. The court ordered William to pay child support, but denied Jennifer's request for attorney fees. Specifically, the court ordered William to pay a deviated child support amount of $678.85 per month, plus processing charge, and ordered each party to pay his or her own work-related child care expenses.
 {¶ 4} William appealed the trial court's judgment to this court. InCameron, we remanded the matter to the trial court based upon the trial court's failure to include a child support worksheet in its decision, and we ordered the trial court to conduct a new evidentiary hearing. Upon remand, the trial court held an evidentiary hearing and issued another decision on July 7, 2006. In its decision, the trial court ordered William to pay a deviated child support amount of $675.92 per month; each party to be responsible for his or her own child care costs; William to maintain health insurance for the children; each *Page 3 
party to pay his or her own attorney fees; and each party to receive one of the tax dependency exemptions every year. William appeals the judgment of the trial court, asserting the following assignments of error:
 1. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED PLAINTIFF-APPELLANT TO PAY CHILD SUPPORT TO DEFENDANT-APPELLEE.
 2. THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT ORDERED PLAINTIFF-APPELLANT TO PAY CHILD SUPPORT TO THE DEFENDANT-APPELLEE WITHOUT APPROPRIATE FINDINGS THAT SUPPORTED A DECISION TO DESIGNATE DEFENDANT-APPELLEE THE RESIDENTIAL PARENT AND THE PLAINTIFF-APPELLEE AS THE OBLIGOR TO DETERMINE CHILD SUPPORT.
 {¶ 5} We will address William's first and second assignments of error together, as they are related. William argues in his first assignment of error that the trial court erred when it ordered him to pay child support. William argues in his second assignment of error that the trial court erred when it ordered him to pay child support without appropriate findings that supported a decision to designate Jennifer the residential parent and him obligor for purposes of child support. A trial court has considerable discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390. An abuse of discretion exists when the trial court's decision is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. There is no abuse of discretion where there is some competent, credible evidence supporting the trial court's decision. Ross v. Ross (1980), 64 Ohio St.2d 203, 208. At the time a trial court orders child support, a child support guideline computation worksheet must be completed *Page 4 
and made a part of the trial court's record. Marker v. Grimm (1992),65 Ohio St.3d 139, paragraph one of the syllabus; R.C. 3119.022. The guideline amount is rebuttably presumed to be the correct amount of child support due, although deviation from the guidelines is addressed in the worksheet. See Marker, supra; R.C. 3119.03; 3119.022.
 {¶ 6} In the present case, William's argument under his first assignment of error is that the trial court failed to "properly weigh" the benefits that Jennifer receives from her remarriage. The trial court discussed the benefits Jennifer receives from her remarriage with regard to two issues. The trial court first discussed the benefits Jennifer receives from her remarriage during its discussion of whether it should impute to Jennifer the $100,000 income earned by her husband for purposes of calculating the child support guidelines worksheet. The trial court specifically declined to do so, and we can find no abuse of discretion in this determination. R.C. 3119.01(C)(11) provides that income is imputed to a parent the trial court finds to be voluntarily underemployed. R.C. 3119.01(C)(11)(a)(i) through (x) lists a number of factors for the court to consider when making its determination. None of these factors include imputing income to a party based solely on the income earned by a new spouse, and William fails to direct us to any authority for doing so. Several courts have explicitly found that a current spouse's income is not listed as income that can be imputed to a party under the statute. See Trenkamp v. Trenkamp (Dec. 1, 2000), Hamilton App. No. C-000203; Frahlich v. Frahlich-Lerch (Aug. 23, 2000), Summit App. No. 19807 (a new spouse's income is not considered under the child support worksheet; only under a deviation analysis). Further, although there may exist limited circumstances when imputing the income of a current spouse to a party should be considered, such as when the party has intentionally diverted income to *Page 5 
the current spouse to make the party's gross income appear less and thereby reduce the child support obligation, the present case does not contain any suggestion of such an intention by Jennifer. See, e.g.,Jaroch v. Madalin, Summit App. No. 21681, 2004-Ohio-1982, at ¶ 3 (father paid a salary to his new wife in an attempt to divert money and reduce his gross income from his medical practice and, in turn, to reduce his child support obligation). In addition, as the trial court found, there is no evidence that Jennifer is earning less than she is capable of earning as a result of her remarriage. In fact, Jennifer's income at the time of the parties' divorce was $33,500 and was $36,500 at the time of the hearing. For these reasons, we find the trial court did not abuse its discretion in declining to impute income to Jennifer based upon the income of her current spouse for purposes of calculating the child support worksheet.
 {¶ 7} The trial court also addressed the benefits Jennifer receives from her remarriage when it analyzed whether to deviate from the child support guidelines worksheet amount. R.C. 3119.22 provides that a court may deviate from the amount of child support indicated in the child support guidelines if, after considering the factors and criteria set forth in R.C. 3119.23, the court determines that the amount calculated would be unjust or inappropriate and would not be in the best interest of the child. We will not reverse a trial court's decision regarding a deviation absent an abuse of discretion. See, generally, Rock v.Cabrai (1993), 67 Ohio St.3d 108, 112. R.C. 3119.23 lists 16 factors a trial court may consider in deviating from the amount of child support that otherwise results from the use of the basic child support schedule and worksheet, including, "(H) Benefits that either parent receives from remarriage or sharing living expenses with another person[.]" After analyzing the parties' circumstances, the trial court here found it *Page 6 
unjust and inappropriate to "heavily weigh" the income of Jennifer's spouse in William's favor.
 {¶ 8} The crux of R.C. 3119.23(H) is the "benefit" the spouse receives. Here, Jennifer undoubtedly receives some financial benefit from cohabiting with her current husband. Jennifer testified that her spouse pays most of the household expenses. However, she stated that the reason her spouse pays most of the household expenses is because she does not receive child support. She testified that she personally does not make enough money to cover the expenses of raising the parties' children. If she were on her own, she stated, she could not meet the living expenses for her and the children. William refers us to Jennifer's testimony that she does not deprive her children of anything. While it is true that Jennifer stated she provides everything the children need, and her children's lifestyle has remained consistent since her divorce from William, she also testified her new husband "subsidizes" her children, and she has to sacrifice things for herself to make up for the shortfall for the children's expenses. Although Jennifer's current husband earns a sufficient income to subsidize the expenses of the parties' children, this does not mean he should bear that responsibility without William reasonably contributing to the shortfall. Further, as the trial court pointed out, Jennifer's husband also has three children of his own from a previous marriage and exercises shared parenting, which gives him custody 50 percent of the time. In addition, he also pays the child support guideline amount to his former spouse for the support of his three children. Jennifer's current husband's income is not so large that he can absorb the deficiency in the monthly expenses for the parties' children without also affecting the financial support he provides for his own children. This reasoning similarly holds true for William's argument that *Page 7 
Jennifer's current husband willingly supports her and pays for any expenses above Jennifer's $1,100 monthly contribution to the household expenses.
 {¶ 9} William further complains that Jennifer is able to pay $152 per month for cosmetic braces for herself, contributes $88 per paycheck to her retirement account, and plans to move into a new house that will double her monthly mortgage payment. It is true that these financial obligations Jennifer has voluntarily undertaken could be factors to weigh in determining a proper child support order. These voluntary expenses would be particularly relevant if they were extravagant. However, they seem to be reasonable expenses for Jennifer's financial and familial circumstances. Particularly reasonable is Jennifer's purchase of a larger home, given the extensive parenting time that she has with the parties' two children and the substantial parenting time her current spouse has with his three children. More importantly, we are mindful of our abuse of discretion standard of review. Although, as mentioned, these expenses could, under certain circumstances, be given more weight and militate against a child support order, they are not so excessive here so as to permit this court to find the trial court's award of child support was arbitrary or unconscionable. Even if this court were to find unpersuasive the trial court's reasoning behind its determination not to heavily weigh the income of Jennifer's current spouse, such would still be insufficient for reversal. AAAA Enterprises,Inc. v. River Place Community Urban Redevelopment Corp. (1990),50 Ohio St.3d 157, 161. Rather, in order to find error under an abuse of discretion standard, we would have to find that there was "no sound reasoning process" to support the decision, which William has failed to demonstrate. Id. *Page 8 
 {¶ 10} We also note that, although the trial court indicated it was inappropriate to "heavily weigh" the income of Jennifer's current spouse, it did not indicate it was not going to consider it at all. Indeed, under its findings for R.C. 3119.23(L), the court acknowledged that Jennifer is able to provide an upper-middle class lifestyle to the children because of the benefits she receives from remarriage and the sharing of living expenses with her spouse. Thus, the court did consider and place some weight upon this fact in making the deviated child support award. That the trial court explicitly considered the economic effect of Jennifer's remarriage makes a reversal based upon our own opinion of the precise evidentiary weight to be given this factor difficult to do, given we perform our task under an abuse of discretion standard. As William seeks under this assignment of error to preclude any child support whatsoever, William actually seeks a finding that this factor is so significant as to outweigh all other factors. Based upon the evidence presented and the reasons cited by the trial court, we cannot make such a finding.
 {¶ 11} William does not contest the trial court's findings as to any other relevant deviation factors under R.C. 3119.23(A) through (O). The trial court found that the parties shared roughly equal parenting time, although William has slightly more. See R.C. 3119.23(D). William's income of $102,173 over the past three years is substantially higher than Jennifer's average income of $35,252.33. See R.C. 3119.23(G). William pays 70 percent of all uncovered healthcare expenses. See R.C.3119.23(J). Further, Jennifer has been unable to save enough money to start a college fund for the children, although William testified that he has been making monthly deposits in an account that he intends to use as a college fund. See R.C. 3119.23(N). We concur in the trial court's factual findings in these respects. *Page 9 
 {¶ 12} However, William does contest, in his second assignment of error, the trial court's finding under R.C. 3119.23(P), which permits the court to consider any other relevant factor. In its discussion of this factor, the trial court acknowledged that William is named the school placement parent in the shared parenting agreement. However, it found that, because both parents are actually the residential parents, it did not heavily weigh William's designation as the school placement parent for determining the child support order. The court concluded that the analysis of the deviation factors strongly supported a deviation of child support after naming Jennifer residential parent and William the obligor. Thus, the court used William's guideline child support obligation of $1,430.92 per month, plus processing charge, as the amount from which to deviate. After discussing the extraordinary circumstances, as defined in R.C. 3119.24(B)(1) through (4), the court stated that the guideline child support amount assumes parenting time between the parents to be an approximate 75/25 percent split, with the residential parent having custody 75 percent of the time. The court noted the parenting time split in the present case to be extremely influential when calculating an equitable deviation, as well as the disparity in the parties' incomes. The trial court found a deviation of $755 per month just and necessary, and ordered William to pay $675.92 per month, plus processing charge, to Jennifer for support of the children.
 {¶ 13} William argues, however, that absent from the trial court's discussion of R.C. 3119.24(P) were any findings that supported its decision to designate Jennifer the residential parent and William the obligor, and, thus, the decision was against the manifest weight of the evidence. In support of this contention, William relies upon French v.Burkhart (May 22, 2000), Delaware App. No. 99CAF07038, in which the court held a *Page 10 
trial court must "state specific facts in support of any decision to initially designate a non-residential, i.e., `obligor' parent for completion of the child support worksheet in shared parenting cases, when using a `sole custody calculation with deviations' method." Id.
 {¶ 14} While we are not bound by the decision in French, we do however find the trial court's decision in the present case did provide an explanation as to why it ordered William to pay child support and, thus, be the "obligor." In naming William the obligor for child support purposes, the trial court indicated that the "instant analysis strongly supports a deviation of child support after naming [Jennifer] residential parent and [William] the obligor." The "instant analysis" referenced was the trial court's analysis of the deviation factors. In this analysis, as outlined above, the trial court found that the income disparity between the parties was "large," with William's income being $102,173 and Jennifer's income being $35,252.33. The trial court also noted that parenting time between the parties was split nearly evenly with William maintaining approximately 55-53 percent of the parenting time. The court also found that Jennifer had greater child care expenses than William. Importantly, as explained above, the trial court found that Jennifer had to rely upon her current spouse's income to support the parties' children. The court cited Jennifer's testimony that her current spouse's income has to be used to subsidize her children and to maintain similar housing to William, while her current husband has children of his own to support and also has custody 50 percent of the time. Therefore, we find that the trial court did provide sufficient findings to support its determination that William should be named obligor for purposes of child support, and we can find no abuse of discretion in such findings. *Page 11 
 {¶ 15} Although not specifically mentioned in the verbiage of the second assignment of error, William also argues under this assignment of error that $755 was an "arbitrary" deviation from the child support guidelines obligation. Although the trial court did not explicitly explain how it arrived at this total, the trial court indicated that the parties' parenting time allocation was extremely influential when calculating a just deviation from the guideline child support obligation. In its earlier findings, the trial court stated that William enjoyed approximately 55 percent of the parenting time, while the child support guidelines worksheet assumed the non-residential parent enjoyed only approximately 25 percent of the parenting time. To arrive at the $755 deviation figure, the trial court apparently took into account the difference between the standard parenting time of the non-residential parent, as assumed in the child support guidelines worksheet, and the actual parenting time of William, and decreased William's child support guidelines obligation by approximately the same proportion and percentage. Although there is no set method for a court to employ to formulate a deviation, see Drzal v. Drzal, Columbiana App. No. 05 CO 31,2006-Ohio-5230, at ¶ 14, the method utilized by the trial court in the present case is a common one to determine the proper amount to deviate from the standard guidelines amount. See, e.g., Linam v. Linam, Columbiana App. No. 02 CO 60, 2003-Ohio-7001, at ¶ 32 (where standard visitation calls for the child to spend 25 percent of the time with a non-residential obligor and 75 percent of the time with a residential obligee, but the child actually spends 50 percent of the time with the obligor and 50 percent with the obligee, it is reasonable for a court to conclude that the obligor should pay half as much as the obligor would under standard visitation and deviate the standard *Page 12 
guidelines obligation by 50 percent). Here, we can find no abuse of discretion in the trial court's methodology.
 {¶ 16} The law is clear that, if a civil judgment is supported by some competent, credible evidence going to all of the essential elements of the case, there should not be a reversal by a reviewing court as being against the manifest weight of the evidence. CE. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279. Based upon the above evidence, we find the trial court did not err in naming William the obligor for purposes of child support and in granting the $755 deviation in child support. Therefore, we find the trial court did not abuse its discretion, and its determinations were not against the manifest weight of the evidence. William's first and second assignments of error are overruled.
 {¶ 17} Accordingly, William's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
 KLATT and FRENCH, JJ., concur. *Page 1