OPINION
{¶ 1} Appellant, Kevin C. Kilgore ("Kevin"), appeals two post-divorce-decree judgment entries of the Ashtabula County Court of Common Pleas, which, respectively, continued Kevin's obligation to pay child support to appellee, Terry Lee Kilgore ("Terry"), and increased that award. For the reasons that follow, we affirm.
 {¶ 2} The final hearing in the parties' underlying divorce case was scheduled for January 25, 2005. On that date the parties agreed to a shared parenting plan regarding their minor son Spencer, then age 9. Pursuant to this agreement, Terry was the designated residential parent during the school year and Kevin was the designated *Page 2 
residential parent during the summer. During the school year, Kevin had possession of Spencer on alternating weekends and overnight on Wednesdays and alternating Sundays. Further, while Kevin had possession of Spencer during the summer, Terry had a similar companionship schedule, and she also had the right to have possession of Spencer during the day while Kevin was at work. At the time the parties entered into this agreement, they both resided in Jefferson, Ohio, and Spencer was enrolled in the Jefferson School District. The parties' final divorce decree adopted the shared parenting plan and was filed on May 18, 2005.
 {¶ 3} In the same month, May, 2005, Kevin moved in with his girlfriend in Strongsville in Cuyahoga County, which is one hour away from Jefferson by car, and subsequently married her. He did not notify Terry or the court prior to this move.
 {¶ 4} After Kevin moved, the possession schedule to which the parties had agreed proved to be unworkable due to the distance between Jefferson and Strongsville. Terry was unable to pick up Spencer to have visitation with him during the day in the summer of 2005, while he was staying with Kevin, because her car is unreliable and she could not afford another one. Also, Kevin was unable to keep Spencer overnight on Wednesdays and alternating Sundays during the school year because he had school the following day in Jefferson. Kevin wanted Terry to drive to Strongsville for Kevin's time with Spencer, but Terry was unable to do so due to the condition of her car. The parties constantly fought over the problems caused by Kevin's move.
 {¶ 5} Three months after the entry of the final decree, on August 11, 2005, Kevin filed a motion to terminate the shared parenting plan and to obtain sole custody of *Page 3 
Spencer. The motion was heard by Magistrate Patricia Walsh on April 25, 2006, April 26, 2006, and April 28, 2006. On May 22, 2006, the magistrate filed her decision ("the parental rights decision"). The magistrate found that Kevin has actively engaged in efforts to alienate Kevin from his mother, and that those efforts have been largely successful because the child told the magistrate he would prefer to live with his father. The magistrate denied Kevin's motion to terminate the shared parenting plan, and, in an effort to grant Spencer's wishes and to improve Spencer's relationship with his mother, decided that both parents would continue to be designated residential parents and legal custodians of the child. The magistrate found that, due to Kevin's remarriage and move to Strongsville, there was a change in circumstances, and it was in Spencer's best interest that the shared parenting plan continue but with modifications.
 {¶ 6} The magistrate designated Kevin as the residential parent for school purposes, and Terry as the residential parent in the summer months. During the school year, Terry was given visitation with Spencer every other weekend. She was to pick him up on Friday and Kevin was to pick him up for return on Sunday. During the summer months, while Terry had Spencer, Kevin was given visitation on alternating weekends. The magistrate further found that the original child support order would remain in effect because: (1) while Terry would have less time with Spencer, she will now have increased transportation costs due to Kevin's decision to move; and (2) there is a large disparity between the parties' household incomes ($94,000 as to Kevin and $10,000 as to Terry). Kevin filed objections to the magistrate's parental rights decision.
 {¶ 7} On April 18, 2005, while the underlying divorce case was still pending, the Ashtabula County Child Support Enforcement Agency filed a notice of commencement *Page 4 
of administrative child support adjustment, recommending that Kevin's child support obligation be increased from $216 a month to $732. In Ashtabula County the determination of child support is determined by the Child Support Magistrate Susan Williams. Kevin requested a hearing on the child support issue, and a hearing was held by Magistrate Williams on January 20, 2006. That hearing was thus held prior to the hearing on the parental rights issues held by Magistrate Walsh in April, 2006.
 {¶ 8} On February 17, 2006, Magistrate Williams' decision regarding child support was filed with an attached child support guideline worksheet ("the child support decision"). The magistrate increased the amount of child support from $216 to $285 per month. She noted Kevin earned $37,000, which included a $3,000 bonus, in 2005, and had received $8,000 from a personal injury lawsuit. She also noted Terry does not earn minimum wage and only earned $6,000 in 2004. The magistrate noted the revised amount of $285 per month represents a downward deviation of $170 per month from the child support guideline amount, which was in the original divorce decree, due to Kevin's agreement to pay certain marital debts. On March 3, 2006, Terry filed an objection to this decision, arguing there was an obvious error on the worksheet that gave Kevin credit for another child which he does not have. However, Kevin did not file any objections to the magistrate's child support decision.
 {¶ 9} As noted supra, Kevin filed objections to Magistrate Walsh's May 22, 2006 parental rights decision, arguing he should have been designated the sole residential parent and further that child support should have been recalculated. In his supplemental objections, he argued that he should not be required to pay any child support because Spencer would be spending more time with him than with Terry under *Page 5 
the modified plan. Instead, he argued that Terry should be the obligor and that the continuation of the original child support award in effect represented a deviation from the support guidelines, which required findings regarding the statutory factors for deviation.
 {¶ 10} On December 28, 2007, the trial court entered its judgment on Magistrate Walsh's parental rights decision. The trial court overruled Kevin's objections to the magistrate's decision and adopted it. The court found that shared parenting was in Spencer's best interest and necessary to counterbalance Kevin's history of attempting to alienate the child from his mother. The court also found the evidence supported the magistrate's finding that there had been a change in circumstances and that the child's best interests justified the magistrate's modification of the shared parenting plan.
 {¶ 11} Further, the court found the magistrate's decision to continue Kevin's obligation to pay child support without modifying that award was fair and equitable because Kevin's voluntary decision to move to Strongsville had resulted in increased transportation costs to Terry and there is a substantial disparity between the household incomes of the parties. The trial court noted the child support issue was still pending before the child support magistrate.
 {¶ 12} The court noted that Kevin knew the shared parenting plan would not work unless the parties lived close together; yet, in the same month the plan was filed, he moved to Strongsville. Kevin did not attempt to discuss needed modifications to the plan with Terry before he moved. The trial court found that, in effect, he unilaterally modified the parenting schedule without a court order. Kevin timely appealed this judgment. Kevin does not challenge the court's decision denying his motion to *Page 6 
terminate the shared parenting plan; instead, he only challenges the provision of the court's judgment continuing the original child support award.
 {¶ 13} On February 5, 2008, the trial court entered its judgment on Magistrate Williams' child support decision. The court sustained Terry's objection concerning the additional child erroneously attributed to Kevin, and otherwise adopted the child support decision, except that it raised the amount of child support owed by Kevin to $300 per month (not $331 as Kevin erroneously states in his brief). While Kevin did not file any objections to the child support decision, he also appeals that decision. While these appeals were pending, this court sua sponte entered an order consolidating them. For his sole assignment of error, appellant asserts:
 {¶ 14} "WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT-FATHER BY FAILING TO INCORPORATE INTO ITS JUDGMENT ENTRY A CHILD SUPPORT WORKSHEET AS WELL AS FAILING TO DETAIL SUFFICIENT FINDINGS OF FACT AND CONCLUSIONS OF LAW WHEN IT ORDERED FATHER TO CONTINUE TO PAY CHILD SUPPORT EVEN THOUGH FATHER WAS AWARDED PRIMARY PLACEMENT AND MOTHER'S NEW PARENTING SCHEDULE DURING THE SCHOOL YEAR WAS ONLY EVERY OTHER WEEKEND."
 {¶ 15} A trial court has broad discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. Pauly v. Pauly,80 Ohio St.3d 386, 390, 1997-Ohio-105. "It is well established that an appellate court employs an abuse of discretion standard when reviewing matters concerning child support." Gordon v. Liberty, 11th Dist. No. 2004-P-0059, 2005-Ohio-2884, *Page 7 
at ¶ 14, citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144. An abuse of discretion connotes more than an error of law or judgment; it implies that the decision of the trial court was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. At the time a trial court orders child support, a child support guideline computation worksheet must be completed and made a part of the trial court's record. Marker v. Grimm (1992), 65 Ohio St.3d 139, paragraph one of the syllabus; R.C. 3119.022.
 {¶ 16} First, Kevin argues that because he has possession of Spencer for more time than Terry under the modified shared parenting plan, the court was obligated to complete a new child support worksheet and incorporate it in its December 28, 2007 judgment. We note the authorities cited by appellant do not require that the child support worksheet be incorporated into or attached to the judgment entry. It is merely required that the worksheet be in the record. Marker, supra.
 {¶ 17} In the trial court's December 28, 2007 entry, which considered the parental rights issues, the court noted that the child support issue was contemporaneously being considered by the child support magistrate. Further, appellant concedes that when Magistrate Williams filed her decision on the child support issue on February 17, 2006, she attached a child support worksheet to her decision. It was therefore part of the record long before the trial court adopted Magistrate Walsh's decision on December 28, 2007. The trial court also attached the worksheet to its February 5, 2008 judgment entry adopting the child support decision. Appellant's first argument lacks merit. *Page 8 
 {¶ 18} Next, Kevin argues that, because Spencer will spend more of his time with him under the modified plan, Terry should have been ordered to pay child support to him. He argues the court's continuation of its original child support order against him essentially amounted to a deviation of the amount of child support owed by Terry, which required the court to set forth findings of fact concerning the statutory factors for deviation.
 {¶ 19} As a preliminary matter, as noted supra, the trial court in its December 28, 2007 judgment entry stated that Magistrate Walsh had merely continued the original child support order and had not modified it. The court further stated the child support issue was pending before the child support magistrate. By failing to file any objections to the child support decision, Kevin failed to preserve for appeal any challenge to the magistrate's increase in the award of child support in favor of Terry. Further, while Kevin filed a notice of appeal from the child support decision, he does not assert any assignments of error on appeal with respect to the trial court's adoption of that decision, as required by App. R. 16. As a result, Kevin's appeal is limited to the trial court's December 28, 2007 judgment entry adopting the parental rights decision.
 {¶ 20} First, we agree with Kevin's argument that the trial court must make findings of fact concerning the statutory factors to support any deviation from the child support guidelines. The Ohio Supreme Court has held: "[a]ny court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." Marker, supra, at paragraph three of the syllabus. *Page 9 
 {¶ 21} R.C. 3119.22 provides that a court may deviate from the amount of child support indicated in the child support guidelines if, after considering the factors and criteria set forth in R.C. 3119.23, the court determines that the amount calculated would be unjust or inappropriate and would not be in the best interests of the child. We will not reverse a trial court's decision regarding a deviation absent an abuse of discretion. See, generally, Rock v. Cabral (1993),67 Ohio St.3d 108, 112. R.C. 3119.23 provides the "court may consider any of the [16 listed] factors in determining whether to grant a deviation pursuant to" R.C. 3119.22. These factors include the amount of time spent with one parent as opposed to the other, the disparity in income between the parties or households, the relative financial resources and needs of each parent, and any other relevant factor.
 {¶ 22} The trial court's findings of fact in its December 28, 2007 judgment entry supported its decision to continue the original child support award. The trial court stated:
 {¶ 23} "While the difficulties and expenses related to visitation, resulting from the distance between the homes of the parties, are unfortunate, the situation was created by [Kevin's] voluntary decision to move to Strongsville. Therefore, the provisions related to transportation of the child and the determination not to recalculate child support are reasonable and supported by the evidence. The magistrate did not modify child support. In fact, it remains exactly the same. [Kevin] is objecting to paying any child support. However, the magistrate's decision regarding child support is particularly fair and equitable on the facts presented in this case, because of the substantial disparity in household incomes of the parties, as outlined and discussed by the *Page 10 
magistrate, [and] also because it is [Kevin] who made the voluntary decision to move to Strongsville. [Kevin's] financial superiority enables him to effectively deny [Terry] any meaningful relationship with Spencer by the simple expedient that she cannot afford the costs of transportation. Since he is responsible for creating the situation, it is reasonable that he should shoulder a small part of the additional costs that he has caused [Terry]."
 {¶ 24} Kevin argues that even if the trial court's reference to increased transportation costs to Terry provided an explanation for requiring him to continue to pay the amount of child support originally ordered by the court, the magistrate was required to specify the exact amount of transportation costs incurred to justify the continued award of child support. However, Kevin never objected to the magistrate's finding that Kevin's move had caused Terry to incur additional expenses. Further, Kevin never objected to the lack of a finding of the exact amount of Terry's increased expenses caused by Kevin's move. As a result, Kevin waived the right to challenge the magistrate's decision on these grounds.
 {¶ 25} Further, contrary to Kevin's argument, the fact that he is the designated residential parent for school purposes under the modified shared parenting plan and may have Spencer for more time than Terry does not necessarily mean that Terry should be the obligor of child support. First, under R.C. 3119.23, the time the child is with one parent as opposed to the other is just one of several factors to consider in determining whether a deviation is appropriate. See, Anthony v.Anthony (Dec. 3, 1999), 11th Dist. No. 98-L-222, 1999 Ohio App. LEXIS 5759, *12. Further, in a shared parenting plan, under R.C. 3109.04(K)(6), both parents are considered residential *Page 11 
parents at all times. Pauly, supra. In Pauly, the Supreme Court of Ohio addressed the issue of whether a parent paying child support under a shared parenting plan is entitled to an automatic credit for the time his children reside with him. The Supreme Court of Ohio held:
 {¶ 26} "R.C. 3113.215(B)(6) does not provide for an automatic credit in child support obligations under a shared parenting order [for the time a parent has cared for his children]. However, a trial court may deviate from the amount of child support calculated under R.C. 3113.215(B)(6) if the court finds that the amount of child support would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child." Id. at syllabus.
 {¶ 27} In Cameron v. Cameron, 10th Dist. No. 06AP-793, 2007-Ohio-3994, the Tenth Appellate District held the trial court did not abuse its discretion in finding that the designation of the husband as the residential parent for school purposes was not determinative of the child support issue. The appellate court noted: "In its discussion of this factor [concerning "any other relevant factor" under R.C. 3119.23(P)], the trial court acknowledged that William is named the school placement parent in the shared parenting agreement. However, it found that, because both parents are actually the residential parents, it did not heavily weigh William's designation as the school placement parent for determining the child support order." Id. at ¶ 12. The Tenth District held that in relying on the financial disparity between the parties, the trial court had made findings of fact which supported a deviation from the child support worksheet guidelines. Likewise, in the case sub judice, the trial court's findings supported the *Page 12 
court's decision to continue the original child support order against Kevin. Appellant's second argument lacks merit.
 {¶ 28} Based upon the foregoing analysis, we find the trial court did not abuse its discretion in continuing Kevin's child support obligation and in increasing the child support award from $216 to $300 in its February 5, 2008 judgment entry. The trial court provided sound reasons for its decisions, which were supported by evidence in the record.
 {¶ 29} For the reasons stated in the Opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.
 COLLEEN M. O'TOOLE, J., concurs, MARY JANE TRAPP, J., concurs. *Page 1