[Cite as *Li v. Yang*, 2012-Ohio-2491.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 96741

---

## WEIQI VINCENT LI

PLAINTIFF-APPELLEE

vs.

## JIHONG YANG

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-243475

**BEFORE:** Celebrezze, J., Blackmon, A.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** June 7, 2012

**FOR APPELLANT**

Jihong Yang, pro se
810 Cobblestone Lane
Lancaster, Pennsylvania   17601


**ATTORNEYS FOR APPELLEE**

James S. Cahn
James L. Lane
Hermann, Cahn & Schneider
The Galleria at Erieview
1301 East Ninth Street
Suite 500
Cleveland, Ohio   44114


**FOR CUYAHOGA SUPPORT ENFORCEMENT AGENCY**

William D. Mason
Cuyahoga County Prosecutor
BY:    Kestra Smith
Assistant Prosecuting Attorney
C.S.E.A.
P.O. Box 93923
Cleveland, Ohio   44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Jihong Yang ("appellant"), appeals the decision of the domestic relations court modifying the child support obligation of plaintiff-appellee, Weiqi Vincent Li ("appellee").

{¶2} The parties were married on August 31, 1991. During the marriage, they had one child, a son, born March 2, 1993. On October 19, 1995, appellee filed for divorce in the Cuyahoga County Court of Common Pleas, Domestic Relations Division. A divorce was eventually granted; the remainder of the proceedings in the trial court revolved around child support and visitation issues.

{¶3} After the parties were divorced, appellee remarried. Appellee's new wife, Karen Qin Yuan ("Karen"), owns all of the stock in a Subchapter S corporation, initially known as American Asian Connection and now known as KQ Yuan Enterprises. The business involves franchises that make sushi to be placed in area grocery stores for a California corporation known as Advanced Fresh Concepts Franchise Corporation ("AFC"). At one point, the sushi business was incorporated in appellee's name. According to appellee, the business was in his name because it was a franchise of a California corporation that required specialized training in order to become a franchisee. Because appellee's new wife speaks little English, appellee completed the training in his wife's place, and the business was placed in his name. When appellee returned with the franchise license, Karen operated the sushi business on her own.

{¶4} In 2006, AFC permitted Karen to transfer the ownership of American Asian Connection into her own name without taking the training course in California. Karen transferred ownership of her primary sushi-making business into her own name, renaming the business KQ Yuan Enterprises, L.L.C.

{¶5} Karen owns and operates two other businesses without the assistance of appellee. The first, Taco Amigo, is a small restaurant in the Galleria Mall in Cleveland, Ohio. The second is the American Asian Enterprise, which is a small sushi restaurant in the Galleria Mall. The restaurants were losing money, and so on August 1, 2008, Karen transferred her ownership interests to a business partner.

{¶6} In April 2006, an administrative hearing was held in the Cuyahoga County Child Support Enforcement Agency ("CSEA") at the request of appellee, who was seeking a modification of his child support obligation. As a result of that hearing, CSEA determined that appellee's support obligation should be increased from $210 per month to $1,309.84 per month, plus a two percent processing fee, for a total of $1,336.04 per month.[1]

{¶7} On October 13, 2006, appellee requested a hearing in the domestic relations court to review CSEA's child support determination. The domestic relations court set a general hearing for December 18, 2006. On December 19, 2006, appellant filed a

---

[1] This amount was based on income attributed from the businesses appellee asserts are owned and operated solely by his wife.

motion to modify child support and a motion to show cause alleging that appellee had failed to pay medical expenses as required by his child support obligation.

{¶8} After several continuances of the hearing date, the trial court scheduled a full evidentiary hearing for May 20, 2008 and informed the parties that no further continuances would be granted. At the conclusion of the May 20, 2008 hearing, the parties notified the court that they had reached a settlement agreement and intended to file an agreed judgment entry to that effect. The parties were given until June 10, 2008 to file the agreed judgment entry. However, prior to the June 10, 2008 deadline, appellant discharged her counsel, who withdrew from the matter.

{¶9} On July 1, 2008, appellant filed a motion requesting a hearing on child support modification and nonpayment of medical expenses. The trial court set a general hearing for August 1, 2008. On July 16, 2008, however, the trial court issued a journal entry that adopted CSEA's determination and raised appellee's child support obligation to $1,336.04 per month. This left nonpayment of medical expenses to be the only issue to be addressed at the August 1, 2008 hearing.

{¶10} On July 22, 2008, appellee filed a motion to vacate the trial court's judgment entry that raised his child support obligation. He also requested a hearing on his objections to CSEA's determination.

{¶11} On August 1, 2008, the trial court granted appellee's motion to vacate and stated that it was granting appellee's motion for a hearing before a magistrate on his

objections to CSEA's administrative modification of his child support obligation. The trial court held the hearing the same day.

{¶12} On August 8, 2008, the magistrate issued her decision, wherein she lowered appellee's child support obligation to $433.64 per month, which included a two percent processing fee. Appellant filed objections to the magistrate's decision. Appellant alleged that appellee had an interest in the sushi businesses and that appellee placed the sushi businesses in his wife's name to lower his child support obligation. Appellant argued that the income from the sushi businesses should be imputed to appellee when determining his child support obligation.

{¶13} On September 22, 2008, the trial judge overruled appellant's objections and adopted the magistrate's decision. Appellant filed her notice of appeal on October 16, 2008.

{¶14} In *Li v. Yang*, 8th Dist. No. 92258, 2010-Ohio-6574, this court reversed and remanded the decision of the trial court on the basis that appellant was not given 30 days notice, in accordance with R.C. 3119.67, before a hearing was held for the purposes of calculating child support.

{¶15} On remand, the matter came before the magistrate for hearing on October 18, 2010. The magistrate issued her decision on December 28, 2010. Therein, the magistrate concluded that CSEA's recommended child support order was incorrect.

Accordingly, the magistrate prepared revised child support computation worksheets[2] and found that appellee's child support obligations were as follows:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that commencing 09/01/2004, Obligor WEI QI VINCENT LI shall pay to obligee, JI HONG YANG or her assignee(s), the sum of $578.42 per month, plus 2% processing charge; that commencing 01/01/2005, he shall pay her $317.83 per month, plus 2% processing charge; that commencing 01/01/2006, he shall pay $400.92 per month, plus 2% processing charge per month, plus 2% processing charge; that commencing 01/01/2007, he shall pay $354.75 per month, plus 2% processing charge; and that commencing 01/01/2009, he shall pay $527.08 per month, plus 2% processing charge for the support of minor child: Noah Daniel Li — dob: 03/02/1993 ($537.62 per month including 2% charge).
>
> * * *
>
> Obligor WEI QI VINCENT LI shall pay an additional $105.42 per month toward the support arrearage which results from the retroactivity of this modification. The arrearage is undermined, and is owed to Obligee, JI HONG YANG her assignee(s), and/or the Cuyahoga Support Enforcement Agency (CSEA). Total monthly support order is $643.04.

{¶16} On April 5, 2011, the trial court issued a judgment entry adopting the magistrate's decision in its entirety.

{¶17} Appellant, pro se, brings this timely appeal raising three assignments of error for review. We note that

> "an appellate court will ordinarily indulge a pro se litigant where there is some semblance of compliance with the appellate rules." However, pro se litigants are presumed to have knowledge of the law and legal procedures and are held to the same standards as litigants who are represented by

---

[2] The magistrate found that appellee's income for child support purposes was $36,866 in 2004, $19,562.78 in 2005, $25,003.50 in 2006, $30,289 in 2007, $30,703 in 2008, and $48,190 in 2009. The magistrate found that appellant's income for child support purposes was $44,884 in 2004, $47,157 in 2005, $47,479 in 2006, $52,661 in 2007, $48,248 in 2008, and $57,680 in 2009.

counsel. *Thomas McGuire Bail Bond Co. v. Hairston*, 8th Dist. No. 89307, 2007-Ohio-6648, at ¶ 6, quoting *Delaney v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. No. 65714, 1994 WL 326097 (July 7, 1994).

Law and Analysis

Standard of Review

{¶18} A trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion. *Gobel v. Rivers*, 8th Dist. No. 94148, 2010-Ohio-4493, ¶ 16. Furthermore, when reviewing the propriety of a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard. *Gray v. Gray*, 8th Dist. No. 95532, 2011-Ohio-4091, at ¶ 7, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). This includes a trial court's decision regarding a child support obligation. *Jarvis v. Witter*, 8th Dist. No. 84128, 2004-Ohio-6628, at ¶ 8, *overruled on other grounds; Siebert v. Tavarez*, 8th Dist. No. 88310, 2007-Ohio-2643, at fn. 2.

{¶19} An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "Abuse of discretion" is a term of art, describing a judgment neither comporting with the record, nor reason. *See, e.g., State v. Ferranto*, 112 Ohio St. 667, 676-678, 148 N.E. 362 (1925). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ent., Inc. v. River Place Comm. Urban Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Further, an abuse of discretion may be found when the trial

court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

## I. Calculation of Income

{¶20} In her first assignment of error, appellant raises several arguments relating to the trial court's handling of appellee's income for child support purposes.

{¶21} Initially, appellant contends that the trial court's child support order "disregarded" pertinent financial records. When determining a parent's income for purposes of calculating child support, R.C. 3119.05(A) provides:

> [t]he parents' current and past income and personal earnings shall be verified * * * with suitable documents, including, but not limited to, pay stubs, employer statements, receipt and expense vouchers related to self-generated income, tax returns, and all supporting documents and schedules for the tax returns.

{¶22} In this matter, the record is clear that the trial court complied with the requirements of R.C. 3119.05(A) when calculating appellee's child support obligation. The record reflects that when compiling appellee's child support computation worksheets, as required by R.C. 3119.022, the trial court relied on numerous financial documents, including appellee's 2004, 2005, 2006, 2007, 2008, and 2009 joint tax returns; copies of the 2007 and 2008 1120 S returns for KQ Yuan Enterprises L.L.C.; and a copy of the franchise agreement between AFC and Karen dated February 23, 2007. Accordingly, we are unable to conclude that the trial court disregarded pertinent financial records when calculating appellee's child support obligation.

**{¶23}** Additionally, appellant contends that appellee fraudulently under reported his income. In particular, appellant claims that appellee and his wife overstated their costs of goods sold, overstated their wages paid to employees, and claimed false and exaggerated business losses in Taco Amigo and American Asian Enterprise to hide income. We find no merit to appellant's broad allegations. Appellant has failed to present any competent or credible evidence that appellee presented the trial court with fraudulent financial information. As stated by the magistrate, "there is no convincing evidence presented by an accountant or other expert or any other forensic evidence that the figures contained in the tax returns were incorrect." Appellant, through her attorney, had the opportunity to cross-examine appellee and Karen about their financial records and failed to present any testimony to substantiate her claim of fraud.

**{¶24}** Finally, appellant contends that appellee and Karen mislead the magistrate by providing false testimony during the October 18, 2010 hearing. Appellant submits that appellee has continuously controlled the day-to-day operations of the sushi business and has fraudulently placed the business under Karen's name to minimize his child support obligation.

**{¶25}** At the October 18, 2010 hearing, appellee testified that he has been employed full time at Case Western Reserve University ("CWRU") since 2005, presently earning approximately $16,985 annually. It is the highest paying job he can find in the current job market. Appellee testified that he has a masters degree in Industrial Engineering, but has been unsuccessful in obtaining an engineering job in his field.

{¶26} During his direct testimony, appellee explained that in 2004, AFC informed Karen that she was required to take a test in order to obtain a sushi franchise. Appellee testified that, based on Karen's difficulties with the English language, he took the mandated test and obtained the franchise in his name. However, he has almost no involvement in the day-to-day operations of the sushi business. He stated that the most involvement he has had with any of her businesses has been delivering sushi a few hours per week. The AFC franchise was held in appellee's name until AFC allowed Karen to transfer the sushi franchises into her name in 2006. The franchise agreements between Karen and AFC were offered into evidence as plaintiff's exhibit Nos. 12 and 13.

{¶27} Karen testified that she has been married to appellee for 13 years.[3] When she initially started the sushi business, no training was required and appellee was not involved. She stated that when AFC began to require training in 2002, she did not know enough English to pass the course. Therefore, appellant took AFC's mandated training courses and obtained the franchise under his name. Karen testified that in 2002, 2003, and 2004, appellee was in school and did not participate in the sushi business. In 2005, appellee worked for free at CWRU until he obtained a full-time position as a research assistant. Karen admitted that appellee occasionally assists the business in making sushi deliveries and completing miscellaneous tasks, such as faxing sales reports and sending emails. Appellee fills in at the sushi business approximately once a week and receives an

---

[3] Karen does not speak fluent English, and Maichen Mao was sworn to interpret her testimony to the court.

hourly wage of $8 per hour for his work. Karen testified that she is the sole owner of the stock in KQ Yuan Enterprises, and appellee has never been an owner or operator of her business.

{¶28} Based on the testimony of appellee and Karen, the magistrate attributed all income earned by the AFC franchise to appellee for the years the franchise was in his name. However, the trial court concluded that since 2006, Karen has been the sole owner and operator of the sushi business. Therefore, the magistrate concluded, "there was no convincing or persuasive evidence that all sushi business income from KQ Yuan Enterprises should be imputed to Obligor."[4]

{¶29} We find no evidence that the magistrate was misled or that appellee and Karen presented false testimony. The trial court, as the trier of fact, was in the best position to weigh the credibility of the witnesses, and we cannot substitute our judgment for that of the trial court in ruling on witness credibility. *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994), citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Furthermore, the testimony of appellee and Karen was supported by the various financial documents submitted at the October 2010 hearing, including joint tax returns, 1120 S tax returns for KQ Yuan Enterprises L.L.C., and signed franchise agreements.

---

[4] Although the magistrate concluded that appellee was not involved in the day-to-day operations of the sushi business, she imputed one-fourth of the net income from the businesses to appellee for child support purposes based on his minimal contributions to the business. Additionally, the magistrate imputed certain business expenses to appellee's total yearly income.

**{¶30}** Accordingly, we find the arguments raised within appellant's first assignment of error to be without merit. Appellant's first assignment of error is overruled.

## II. Fraudulent Testimony

**{¶31}** In her second assignment of error, appellant argues that the trial court erred by revising a CSEA determined support order based on the allegedly fraudulent testimony of Karen.

**{¶32}** As stated, on April 18, 2006, CSEA determined that appellee's support obligation should be increased from $210 per month to $1,309.84 per month, plus a two percent processing fee, for a total of $1,336.04 per month. Following the recommendation of CSEA, appellee exercised his statutory right to a court hearing.

**{¶33}** Following the receipt of such a request, R.C. 3119.64 requires the court to conduct a hearing in accordance with R.C. 3119.66. R.C. 3119.66, in turn, requires the court to "conduct a hearing to determine whether the revised amount of child support is the appropriate amount and whether the amount of child support being paid under the court child support order should be revised." The court must provide the parties notice of the hearing and, if necessary, require the parties to provide copies of various records, including W-2 statements, pay stubs, and proof of health insurance. *See* R.C. 3119.67 and 3119.68.

**{¶34}** Finally, pursuant to R.C. 3119.70, if a court conducts a hearing pursuant to R.C. 3119.66 and determines that the revised child support amount is appropriate, the

court must issue a revised court child support order requiring the obligor to pay the revised amount. But, if the court finds that the revised child support amount is not appropriate, then the court must "determine the appropriate child support amount and, if necessary, issue a revised court child support order requiring the obligor to pay the child support amount determined by the court." R.C. 3119.70(B); *see also Staugler v. Staugler*, 160 Ohio App.3d 690, 2005-Ohio-1917, 828 N.E.2d 673, ¶ 12-14 (3d Dist.).

**{¶35}** Under the plain language of both R.C. 3119.66 and 3119.70(B), before revising an obligor's amount of child support pursuant to an administrative recommendation, the trial court must first determine whether the revised amount of child support as recommended is appropriate. Only if the trial court first finds that the amount of revised child support, as calculated by CSEA, is inappropriate may it then make an independent determination concerning the appropriateness of the amount of child support currently being paid.

**{¶36}** In this matter, the magistrate reviewed the CSEA child support order and determined that CSEA had used an incorrect business income for appellee in the tax year 2004. Specifically, the magistrate stated:

> CSEA's findings from the 2004 joint tax return were incorrect when it used $252,245 as total business expenses for the two entities AFC franchise and Asia Cuisine and found $108,105 to be the net income from the two businesses for year 2004 and used this amount on the guidelines. The total expenses including cost of goods sold for the two entities in 2004 were $310,792 not $252,245. Business income from the two entities in 2004 after deducting cost of goods sold and business expenses was $49,558 as shown on line 12 of the tax return and line 31 of the two Schedule C's. Net profit for AFC that year was $25,624 and net profit for Asiana was $23,934.

{¶37} Based on the perceived errors in CSEA's child support calculation, the magistrate conducted its own independent review to determine the appropriate amount of child support pursuant to R.C. 3119.70(B). At that point, the magistrate utilized the submitted financial records and the testimony of appellee and Karen to complete new child support computation worksheets and determined that the appropriate amount of child support in this matter equated to $643.04 per month.

{¶38} Appellant contends that the trial court abused its discretion in adopting the magistrate's decision because the magistrate's decision to revise the CSEA child support obligation was impermissibly based on the untruthful and fraudulent testimony of Karen. As discussed in appellant's first assignment of error, appellant has failed to present evidence to support her allegations of fraud. Moreover, the testimony of Karen was irrelevant to the magistrate's initial decision to revise CSEA's child support recommendation. Rather, the magistrate's decision to revise the child support order was based solely on the court's observed errors in the CSEA calculation.[5] Karen's testimony that she was the sole owner and operator of the sushi business only became relevant once the magistrate began its own independent determination of appellee's child support obligation. Appellee's and Karen's testimony was particularly relevant because the trial court "shall not" include income earned by a parent's current spouse in the calculation of

---

[5] Our review of appellee's 2004 joint tax return and the attached Schedule C documents confirms the errors in the CSEA child support calculation.

the parent's gross income for child support.  R.C. 3119.05(E); *see also Quinn v. Paras*,

8th Dist. No. 82529, 2003-Ohio-4952.[6]

**{¶39}** Finding no error in the magistrate's child support analysis, we conclude that

the trial court did not abuse its discretion in adopting the magistrate's decision to revise

CSEA's recommended child support order.

**{¶40}** Appellant's second assignment of error is overruled.

### III.  Perjury

**{¶41}** In her third assignment of error, appellant argues that appellee, Karen, and

their attorney each lied to the court while under oath.  As stated, the magistrate was in

the best position to weigh the credibility of the witnesses, and there is nothing in the

record to support appellant's broad allegations of perjury.

**{¶42}** Appellant's third assignment of error is overruled.

**{¶43}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into

execution.

---

[6] There may exist limited circumstances when imputing the income of a current spouse to a party should be considered, such as when the party has intentionally diverted income to the current spouse to make the party's gross income appear less and thereby reduce the child support obligation. *Cameron v. Cameron*, 10th Dist. No. 06AP-793, 2007-Ohio-3994, ¶ 6. However, as discussed throughout this opinion, the trial court was in the best position to weigh the credibility of the witnesses, and we find no abuse of discretion in its conclusion that appellant failed to present sufficient evidence to establish such an intention by appellee in this matter.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA ANN BLACKMON, A.J., CONCURS;
KENNETH A. ROCCO, J., DISSENTS (WITH SEPARATE OPINION)

KENNETH A. ROCCO, J., DISSENTING:

{¶44} I respectfully dissent from the majority's conclusion plaintiff-appellee Weiqi Vincent Li did not fraudulently transfer the sushi business to Karen Qin Yuan to minimize his child support obligation. In 2006, Advanced Fresh Concepts Franchise Corporation (AFC) allowed Li to transfer the ownership of American Asian Connection into Karen's name. In the same year, Li sought modification of his child support obligation. When CSEA increased his obligation from $210 to $1,336.04 following a hearing, Li continued to seek a reduction in the obligation based on the transfer of the sushi business to Karen. Li ultimately prevailed in 2011 when the trial court accepted Li's and Karen's explanation about the transfer and failed to impute the business's income in calculating Li's monthly child support obligation.

{¶45} Li argued his wife's business is an independent and separate asset from his own assets and cannot be used by the trial court to support a finding of his ability to pay additional child support. A woman maintains ownership rights over property she owned at the time of the marriage. *See* R.C. 3105.171(A)(6)(a). "Marital property" includes,

however, property that is acquired by either spouse or both spouses during marriage. *See* R.C. 3105.171(A)(3)(a).

{¶46} The majority states, "[a]ppellee's and Karen's testimony was particularly relevant because the trial court 'shall not' include income earned by a parent's current spouse in the calculation of the parent's gross income for child support. R.C. 3119.05(E); *see also Quinn v. Paras*, 8th Dist. No. 82529, 2003-Ohio-4952." The majority nonetheless recognizes, but fails to find here, there are "[c]ircumstances when imputing the income of a current spouse to a party should be considered, such as when the party has intentionally diverted income to the current spouse to make the party's gross income appear less and thereby reduce the child support obligation * * *." *See, e.g.*, *Jaroch v. Madalin*, Summit App. No. 21681, 2004-Ohio-1982, ¶ 3 (father paid a salary to his new wife in an attempt to divert money and reduce his gross income from his medical practice and, in turn, to reduce his child support obligation). *Cameron v. Cameron*, 10th Dist. No. O6-AP-793, 2007-Ohio-3994.

{¶47} R.C. 3119.22 provides further that a court may deviate from the amount of child support indicated in the child support guidelines if, after considering the factors and criteria set forth in R.C. 3119.23, the court determines that the amount calculated would be unjust or inappropriate and would not be in the best interest of the child. R.C. 3119.23 lists 16 factors a trial court may consider in deviating from the amount of child support that otherwise results from the use of the basic child support schedule and worksheet, including "(H) [b]enefits that either parent receives from remarriage or

sharing living expenses with another person[.]" *See Inscoe v. Inscoe*, 121 Ohio App.3d 396, 426, 700 N.E.2d 70, (4th Dist.1997).

**{¶48}** Before considering the benefits a parent receives from remarriage or from sharing living expenses with another person, the trial court must first make findings that the amount calculated pursuant to the child support schedule (1) would be unjust or inappropriate and (2) would not be in the best interest of the child. *See* R.C. 3119.22. *Inscoe* at 426.

**{¶49}** A voluntary act that limits earnings does not comport with the basic rules of fairness and may not be utilized as a means to escape the responsibility of providing child support. *See Roski v. Roski*, 8th Dist. No. 62370, 1992 WL 62728 (Mar. 26, 1992), *appeal dismissed*, 65 Ohio St.3d 1408, 598 N.E.2d 1161 (1992), citing *Haynie v. Haynie*, 19 Ohio App.3d 288, 484 N.E.2d 750 (8th Dist.1984), and *Fox v. Fox*, 8th Dist. No. 43636, 1982 WL 2311 (Jan. 28, 1982). Obligor parents should not be permitted to avoid child support obligations by liquidating or transferring their businesses or other property. We would not allow such transfers to defraud creditors; therefore, the trial court should not have allowed a reduction in Li's child support obligation to his child through Li's transfer of the sushi business to Karen. *See generally* R.C. 1336.04; *Dinu v. Dinu*, 8th Dist. No. 91705, 2009-Ohio-2879.

**{¶50}** Under the circumstances of this case, the trial court erred in calculating Li's income by not including all of the income from the sushi business transferred to Karen. The trial court's calculation was unjust, and in the best interest of Li and Karen, and not

in the best interest of the child. The majority's acceptance of the trial court's decision sets a dangerous precedent that will be relied on by other child support obligors in their attempt to reduce their child support obligations by transferring assets, property, business holdings, etc. to their current spouse, and then seeking a reduction in their obligations. I would, therefore, reverse and remand with direction to recalculate Li's child support obligation consistent with this opinion.