[Cite as *Brown v. Brown*, 2014-Ohio-2402.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100499

## SUSAN J. BROWN

PLAINTIFF-APPELLEE/
CROSS-APPELLANT

vs.

## JAMES P. BROWN, ET AL.

DEFENDANTS-APPELLANTS/
CROSS-APPELLEES

### JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-10-330893

**BEFORE:** Rocco, P.J., Blackmon, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** June 5, 2014

**ATTORNEYS FOR APPELLANT**

Joseph G. Stafford
Anne C. Fantelli
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza
5th Floor
Cleveland, OH 44114

**ATTORNEYS FOR APPELLEE**

Cheryl M. Wiltshire
Margaret E. Stanard
Stanard & Corsi Co., L.P.A.
1370 Ontario Street
Suite 748
Cleveland, OH 44113

KENNETH A. ROCCO, P.J.:

{¶1} Defendant-appellant/cross-appellee, James P. Brown, appeals from the divorce judgment of the Cuyahoga County Court of Common Pleas, Division of Domestic Relations, entered on October 2, 2013. Appellee/cross-appellant, Susan J. Brown filed a cross-appeal, but she requested that we consider her cross-appeal only if we find merit to any of James's 13 assignments of error. For the reasons that follow, we overrule all of James's assignments of error. Accordingly, we do not address the cross-assignments of error. The trial court's final judgment is affirmed.

{¶2} The parties were married on March 24, 2002, and one child was born as issue of the marriage. At the time that the complaint for divorce was filed, James was employed by Deloitte Consulting and Susan was a self-employed business owner.

{¶3} On March 26, 2010, Susan filed a complaint for divorce. Various motions and rulings were made during the course of the proceedings below. Trial commenced on October 24, 2011, and concluded on November 4, 2011. The magistrate issued its decision on February 21, 2013, setting forth its findings of fact and conclusions of law. Both parties filed their objections to the magistrate's decision. Thereafter, the trial court issued a final judgment entry on October 4, 2013, granting the parties' divorce; sustaining in part, and overruling in part the parties' objections; and adopting the recommendations of the magistrate with modifications. James now appeals, raising thirteen assignments of error. We address the assignments of error out of order for ease of discussion.

### *Motion for a New Trial*

{¶4} In his first assignment of error, James argues that the trial court erred and/or abused its discretion by failing to grant his motion for a new trial based on the 16-month delay between the trial and the magistrate's decision. We overrule the assignment of error.

{¶5} The trial in this case ended on November 4, 2011. The magistrate's decision was not filed until February 21, 2013. James asserts that this delay deprived him of his right to due process under the Ohio and United States Constitutions. James bases his due process argument on Sup.R. 40(A)(2) which provides that "[a]ll cases submitted for determination after a court trial shall be decided within ninety days from the date the case was submitted." James is essentially arguing that Sup.R. 40(A)(2) provided him with a constitutional right to have his case resolved within ninety days following trial.

{¶6} But the rules of superintendence "are guidelines for judges only and are not intended to function as rules of practice and procedure." *Caudill v. Caudill*, 6th Dist. Sandusky No. S-04-018, 2006-Ohio-1116 , ¶ 5, citing *State v. Mahoney*, 34 Ohio App.3d 114, 517 N.E.2d 957 (1st Dist.1986). *See also Gardner v. Bisciotti*, 10th Dist. Franklin No. 10AP-375, 2010-Ohio-5875, ¶ 25. It follows that Sup.R. 40(A)(2) cannot form the basis for a due process claim. Accordingly, we overrule the first assignment of error.

### *Duration of Marriage*

{¶7} In his second assignment of error, James asserts that the trial court erred and/or abused its discretion in determining the duration of the marriage. We disagree.

{¶8} The trial court must determine the beginning and ending date that defines the duration of the marriage. "[T]he date of the final hearing is presumed to be the appropriate termination date of the marriage unless the court, in its discretion, uses a de facto termination." *O'Brien v. O'Brien*, 8th Dist. Cuyahoga No. 89615, 2008-Ohio-1098, ¶ 40, citing R.C. 3105.171(A)(2). We will not reverse the trial court's decision absent an abuse of discretion. *Id.* at ¶ 41.

{¶9} Generally, a trial court uses a de facto termination-of-marriage date only in cases where the parties have separated; have made no attempts to reconcile; and have continually maintained separate residences, separate business activities, and separate bank accounts. *Id.*, citing *Gullia v. Gullia*, 93 Ohio App.3d 653, 666, 639 N.E.2d 822 (8th Dist.1994). We have cautioned that a de facto date should not be used unless the "evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances." *Id.* Further, a court should not use a de facto date based only on the fact that one spouse has vacated the marital home. *Id.*

{¶10} In the instant case, the trial court determined that the marriage continued through the first date of the final hearing, which took place on October 24, 2011. James had asked the magistrate to use a de facto date of December 12, 2009, which was the date when James left the marital residence. In rejecting James's position, the trial court credited Susan's testimony that the parties had continued to discuss reconciliation even after James had left the marital residence. The trial court also concluded that the parties' finances were not separated as of the first day of trial.

Based on these findings, the trial court determined that it would be "very inequitable" to Susan to use the December 12, 2009 date, and so it applied the statutory presumption that the marriage ended on the first day of the final hearing.

{¶11} James has failed to demonstrate that the trial court abused its discretion in applying the statutory presumption that the end of the marriage was the first date of the final hearing. The trial court found that Susan was credible when she asserted that the parties had continued to discuss reconciliation, and we adhere to the long-standing principle of giving deference to the trier of fact's credibility determinations. And although James asserts on appeal that the parties' finances had been kept separate since he left the marital home, he does not cite to any record evidence to support this assertion. The trial court did not abuse its discretion in determining that the marriage ended on October 24, 2011, and so we overrule the second assignment of error.

### *Economic Misconduct*

{¶12} In his eighth assignment of error, James argues that the trial court erred and/or abused its discretion by failing to find that Susan committed economic misconduct. This assignment of error is overruled.

{¶13} Under R.C. 3105.171(E)(4),[1] if the trial court determines that one spouse has "engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets," then it may

---

[1]Formerly codified as R.C. 3105.171(E)(3).

order a "distributive award or * * * a greater award of marital property" in order to compensate "the offended spouse."

{¶14} A spouse commits "financial misconduct" if he or she engages in "'some type of wrongdoing'" and he or she "'either profit[s] from the misconduct or intentionally defeat[s] the other spouse's distribution of marital assets.'" *Haynes v. Haynes*, 8th Dist. Cuyahoga No. 92224, 2009-Ohio-5360, ¶ 35, quoting *Bostick v. Bostick*, 8th Dist. Cuyahoga No. 90711, 2008-Ohio-5119. The complaining spouse bears the burden of proving financial misconduct. *Id.* And we review the trial court's decision whether to make an award under the statute for abuse of discretion. *Id.*

{¶15} In the instant case, both parties had alleged financial misconduct by the other. The trial court concluded that neither party met the burden of proving that the other committed financial misconduct. James argues that the trial court abused its discretion in failing to find that Susan committed several acts of financial misconduct. James argues that he is entitled to a distributive award. We address each of his allegations separately.

### Susan's Alleged Self Help

{¶16} James's first allegation of economic misconduct pertains to Susan's removal of $45,000 from the parties' joint checking and savings account. On December 12, 2009, Susan called the police on James. About this time, Susan discovered that James was dating another woman. After the December incident, but before she had filed the complaint for divorce, Susan had moved money from marital accounts. The trial

court later issued a restraining order against her. However, the trial court also determined that credible evidence existed that demonstrated that she later returned those funds to the marital accounts.

**{¶17}** James asserts that the trial court abused its discretion because it ignored Susan's testimony on cross-examination. Apparently, James believes that Susan's testimony does not support the trial court's finding. But the transcript reveals that Susan testified both that she withdrew money and that she returned the money. Contrary to James's argument, the trial court did not ignore Susan's testimony; it heard the testimony and then made a credibility determination in Susan's favor. Because the trial court determined that Susan returned the money, it follows that Susan did not profit from the withdrawals and that the withdrawals did not defeat James's distribution of marital assets. Accordingly, the trial court did not err in determining that there was no economic misconduct under R.C. 3105.171(E)(4).

*North Windsor Court Sale*

**{¶18}** James next argues that Susan committed economic misconduct with regard to the sale of the former marital residence. The parties agreed to sell the property at a loss. When they did so, they entered into a contract that required that the house be surrendered by a date certain with a definitive closing date. There was a $10,000 penalty plus a $400 fee for every day they went beyond the closing date. The deal did not timely close, and the parties incurred a penalty exceeding $10,000.

**{¶19}** James argued that it was Susan's fault that the deal did not close on time. Susan blamed James. Both parties blamed their counsel. The trial court concluded that the sale did not close on time because each party was attempting to gain an advantage over the other party as to where the funds would come from to close the deal. Neither party wanted to use their separate funds in the accounts to close the deal. Ultimately, the deal was closed following the liquidation of some stock in one of the accounts.

**{¶20}** According to James, Susan was solely to blame, because she objected to James's request to partially release a restraining order that had been placed on one of the accounts. James asserts that Susan instead insisted that the funds for closing come from multiple sources. Assuming this is true, James fails to explain why Susan's position was the cause of the late closing. James does not address the trial court's finding that he, too, held up the closing by insisting that the funds be secured in the manner that suited him best. We find no abuse of discretion here.

*Payment of Tax Liabilities*

**{¶21}** Finally, James asserts that Susan refused to timely cooperate with the release of James's distributions for the payment of the parties' tax liabilities. According to James, Susan's conduct jeopardized James's employment and caused a minimum of $6,000 in penalties and interest related to the late payment of the parties' tax obligations. But we are unable to address his argument because he fails to support it with any citation to the record as is required by App.R. 16(A)(7). *See, e.g., Calhoun v. Calhoun*, 8th Dist.

Cuyahoga No. 93369, 2010-Ohio-2347, ¶ 30. For the aforementioned reasons, we overrule the eighth assignment of error.

### *Division of Marital Property*

**{¶22}** James raises three assignments of error pertaining to the trial court's division of marital property. We find no merit to any of these arguments. ***Separate Property***

**{¶23}** In his fifth assignment of error, James asserts that the trial court erred in failing to award him his separate property. A trial court's characterization of property as marital or separate property is a mixed question of law and fact, and we will not reverse the trial court unless its decision is against the manifest weight of the evidence. *Williams v. Williams*, 8th Dist. Cuyahoga No. 95346, 2011-Ohio-939, ¶ 8, citing *Torres v. Torres*, 8th Dist. Cuyahoga Nos. 88582 and 88660, 2007-Ohio-4443, ¶ 14. Once the property is characterized as either marital or separate, the actual distribution will not be disturbed absent an abuse of discretion. *Williams* at ¶ 8, citing *Larkey v. Larkey*, 8th Dist. Cuyahoga No. 74765, 1999 Ohio App. LEXIS 5174 (Nov. 4, 1999).

**{¶24}** Marital property includes "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the

marriage." R.C. 3105.171(A)(3)(a)(i). Separate property includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii).

{¶25} The party asserting that an asset is separate property has the burden of proving that claim by a preponderance of the evidence. *Hall v. Hall*, 2d Dist. Greene No. 2013 CA 15, 2013-Ohio-3758, ¶ 14, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994). If separate property has been commingled with marital property, i.e., put together into a common fund, the party seeking to have an asset treated as separate property must also prove by a preponderance of the evidence that the property can be traced to its prior separate identity. *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 49, citing *Williams* at ¶ 10; *see also* R.C. 3105.171(A)(6)(b).

{¶26} James argued below that he had a separate property interest in his Deloitte 401(k) retirement account in the amount of $115,457.78. The trial court rejected James's position and determined that the entirety of the 401(k) account should be treated as marital property. The trial court found that James had failed to sufficiently trace any of the funds to premarital separate property. James had not produced any documentary evidence to show that the source of the funds in this account was from separate premarital property. James asserted that he could not produce records because the previous holder of his 401(k) did not possess those records. But the trial court concluded that James could have carried his burden to trace the funds by using other records such as tax returns or W2s. James failed to produce such documentation. Because the trial court found

James's credibility to be lacking, it refused to find sufficient tracing based solely on his testimony. The trial court had determined that James's credibility had been inconsistent. Having determined that James failed to meet his burden to trace a separate property interest, the trial court ordered that the entire 401(k) account was marital property.

{¶27} James does not explain why he failed to produce alternative documentation such as tax returns or W2s to demonstrate his alleged separate-property interest. Instead, he argues that he met his burden of tracing back his separate property interest through his oral testimony.[2] But the trial court determined that James lacked credibility. And because the trial court, as the trier of fact, was in the best position to observe the witness and assess his veracity, we will not substitute our judgment for that of the trial court on credibility matters. *Li v. Yang*, 8th Dist. Cuyahoga No. 96741, 2012-Ohio-2491, ¶ 29. The trial court did not err in determining that James had failed to carry his burden and in finding that the 401(k) account was marital property.

{¶28} James also argues that he was not properly credited for his separate property interest in a UBS account. The trial court noted that a full tracing of the activity in the UBS account was not presented to the court. Instead, the parties deluged the court with a copy of the entire history of the account but dating back only to 2005. The parties failed to present a detailed analysis of the account. The trial court correctly explained

---

[2]James also relies on expert testimony but he concedes that the expert based his calculations on James's representations.

that it was "not [its] responsibility to go through mounds of documents looking to prove or disprove one of the parties['] arguments." Magistrate Decision at 16.

{¶29} In spite of this evidentiary shortcoming, the trial court was able to ascertain, from an October 2010 statement, that James did have some stocks in the UBS account that were purchased by him in 1999, prior to the marriage. The value of those stocks totaled $10,196.86. James had sold the stock to complete the sale of the North Windsor Court residence. The trial court's final order awarded James a $10,196.86 offset of marital property to compensate him for the sale of this separate property.

{¶30} It is not altogether clear what James is arguing on appeal with respect to the UBS account. It appears that he is asserting that his separate property interest should have been $27,878.06. But in support of this allegation, he casually refers us to another "mound of documents" with no supporting citation to page numbers or dates. Like the trial court, we will not pour over a pile of papers to try and prove or disprove his argument for him.

{¶31} James also asks that we order that one part of the UBS account be closed and that those proceeds be divided equally amongst the parties.[3] James does not support his argument with citation to the record, and so we unable to assess the merits of this argument. *See* App.R. 16; *Calhoun*, 8th Dist. Cuyahoga No. 93369, 2010-Ohio-2347, at ¶ 30. We overrule the fifth assignment of error.

---

[3]James does sufficiently explain this in his brief, but we were able to glean from the magistrate's decision that the UBS account contained separate sub account numbers. It appears that James's argument here is with respect to one of those sub account numbers.

*Valuation of Consign Home Couture, L.L.C.*

**{¶32}** In his sixth assignment of error, James argues that the trial court erred and/or abused its discretion because it failed to properly value Susan's business, Consign Home Couture, L.L.C. ("Consign"), and because it failed to divide a shareholder loan that Susan had made to Consign. In determining a business's value, the trial court has discretion to weigh the testimony offered by the parties' valuation experts. *Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 62, citing *Bryan v. Bryan*, 8th Dist. Cuyahoga No. 97817, 2012-Ohio-3691. We review the trial court's valuation for abuse of discretion under the relevant facts and circumstances. *Gentile* at ¶ 63. We do not require that the trial court adopt any particular methodology in determining a business's value. *Id*.

**{¶33}** In this case, neither party presented expert testimony regarding Consign's value. Susan asserted that the business's value was $11,332. The trial court noted that the business had over $24,000 of cash in the checkbook, a few dollars in savings, and $3,000 in inventory. No liquidation value was given for the inventory. Sales were steadily increasing, totaling $237,843 in 2010. A tax return indicated that the business had assets in the amount of $35,303; however, $19,319 of this amount came from intangible assets and the cash balance as of 2010 was only $7,493.00. The business owed Susan for an outstanding shareholder loan in the amount of $3,670. No other evidence was presented as to Consign's outstanding debt or to any obligation regarding the lease on the premises. No evidence was presented as to whether or not the cash

accounts included any obligation to the state of Ohio for collected sales tax. Based on the evidence before it, the trial court concluded that Susan's valuation of $11,332 was the best evidence available and accepted this figure as Consign's value.

**{¶34}** James asserts that the trial court abused its discretion in adopting this valuation and argues that the correct valuation should be $35,303. James's figure is based on the value of the business assets that was listed on a tax return. But this figure does not accurately represent Consign's value, because it does not account for Consign's liabilities. Based on the evidence that the parties provided, we cannot say that the trial court abused its discretion in crediting Susan's evidence and determining that Consign's value was $11,332.

**{¶35}** We similarly reject James's argument that the trial court failed to account for the shareholder loan. In its discussion of assets and liabilities, the trial court acknowledged the existence of the shareholder loan. We can, therefore, infer that the trial court took this loan into consideration in determining Consign's value. It follows, then, that the loan was accounted for in the division of property. We overrule the sixth assignment of error.

### Division of Deloitte Capital Account and MoRE Account

**{¶36}** James has an interest in Deloitte L.L.P. and in Deloitte Consulting L.L.P. These interests are partially reflected in a Deloitte Capital Account and a MoRE account. The trial court characterized these accounts as "significant retirement enhancers." In his seventh assignment of error, James asserts that the trial court erred and/or abused its

discretion by improperly dividing the Deloitte Capital Account and MoRE Account. We will not assess the merits of this assignment of error because James's brief provides no legal authority to support his argument. *See, e.g., Thornhill v. Thornhill*, 8th Dist. Cuyahoga No. 92913, 2009-Ohio-5569, ¶ 11, citing App.R. 16(A)(7) (declining to address assignment of error where party fails to support argument with citation to legal authority).

### *Spousal Support*

**{¶37}** James next contests the trial court's determination of spousal support. A trial court has broad discretion in determining proper spousal support based on the facts and circumstances of each case. *Comella v. Parravano*, 8th Dist. Cuyahoga No. 100062, 2014-Ohio-834, ¶ 8. We will not substitute our judgment for that of the trial court absent an abuse of discretion. *Id.* The trial court's judgment will be affirmed so long as there is competent, credible evidence in the record to support its decision. *Id.*

**{¶38}** In determining whether spousal support is appropriate and reasonable, the trial court must consider the factors set forth in R.C. 3105.18(C)(1). *Kaletta v. Kaletta*, 8th Dist. Cuyahoga No. 98821, 2013-Ohio-1667, ¶ 22. No single factor, by itself, is determinative. *Id.* The factors the trial court must consider include: each party's income, earning capacity, age, retirement benefits, education, assets and liabilities, and physical, mental, and emotional condition; the duration of the marriage; their standard of living; inability to seek employment outside the home; contributions during the marriage; tax consequences; and lost income due to a party's fulfillment of marital responsibilities.

R.C. 3105.18(C)(1)(a)-(m). The trial court may also consider any other factor that it finds to be "relevant and equitable." R.C. 3105.18(C)(1)(n). The trial court is not required to expressly comment on each factor, but it must indicate the basis for an award of spousal support in sufficient detail so as to enable a reviewing court to determine whether the award is "fair, equitable, and in accordance with the law." *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, citing *Kaletta*.

{¶39} In the instant case, the trial court stated that it had considered the R.C. 3105.18(C)(1) factors and referred to the detailed discussion in the magistrate's report as to how those factors applied in this case. After considering those factors, the trial court determined that spousal support was appropriate and reasonable, and ordered James to pay spousal support in the amount of $5,000 per month for 15 months. The trial court retained jurisdiction to make later modifications with respect to the amount of and the duration of the award. The final order further provided that spousal support would terminate upon the death of either party or upon Susan's remarriage.

{¶40} In his third assignment of error, James argues that the trial court erred and/or abused its discretion in determining the duration of spousal support and in failing to include a provision terminating spousal support upon the cohabitation of Susan with an unrelated male. We disagree.

{¶41} We first address James's argument that the trial court abused its discretion by not including a provision for the termination of spousal support upon the cohabitation with an unrelated male. James argues that public policy requires that such a provision

be included in an order awarding spousal support. But the law does not require such a provision, and so there can be no abuse of discretion.

**{¶42}** James next argues that the trial court abused its discretion in the duration of the award. According to James's calculations, by the time the trial court entered its final judgment entry, he had already paid 42 months of spousal support to Susan. James asserts that when the additional 15 months of prospective spousal support is added to the 42 months, James will pay 57 months of spousal support, which is longer than half of the marriage's duration. James claims, without citation to any legal authority, that the customary spousal support obligation is one-third the term of the marriage.

**{¶43}** Assuming that everything alleged by James is true, he has failed to demonstrate that the trial court abused its discretion in ordering a 15-month award. While James might believe this award is "excessive, unreasonable, and unconscionable" the trial court acted within its broad discretion and the record indicates that the trial court properly considered the factors set forth in R.C. 3105.18(C)(1). The trial court is not required to limit the duration of the award to one-third the term of the marriage.

**{¶44}** Next, James argues that the amount of the award was not supported by the evidence. James disagrees with the trial court's treatment of Susan's earning potential. But James does not argue that the trial court made any miscalculations pertaining to Susan's income. Rather, he argues that Susan's insistence in continuing to operate her own business was irrational, and that she is voluntarily making less money than she is capable of earning. But the trial court did, in fact, consider this situation. The trial

court stated that it was giving "consideration to the huge difference in the parties' income between the two households *even if [Susan] is employed at a level closer to her previous income of $85,000.*" (Emphasis added.) Magistrate's Decision at 31. The trial court properly considered the factor, but it did not arrive at the conclusion hoped for by James. This does not constitute an abuse of discretion.

{¶45} James also argues that the trial court was required to consider James's adjusted gross income, but instead the trial court considered his gross income. This argument lacks merit. R.C. 3105.18 is silent with respect to gross or net income, referring only to "income of the parties." *Russell v. Carr*, 8th Dist. Cuyahoga No. 66104, 1995 Ohio App. LEXIS 2498, *4 (June 15, 1995), quoting R.C. 3105.18(C)(1)(a). We have previously explained that this provision gives the trial court latitude in calculating income for purposes of spousal support and that the focus is not on actual wages earned, but rather, on earning capacity. *Id.*, citing *Frost v. Frost*, 84 Ohio App.3d 699, 720, 618 N.E.2d 198 (10th Dist.1992). The trial court considered James's gross income. For Susan's income, the trial court imputed to her $25,000 even though her gross income was only $18,000. The trial court also considered the fact that James was in the highest tax bracket, and that the award would be a taxable adjustment to his income. The trial court considered the fact that Susan was in a lower tax bracket and that the award would count toward her taxable income. Thus, the trial court properly considered the parties' income and tax consequences under R.C. 3105.18.

**{¶46}** James also argues that the retirements benefits were not properly factored, but this argument is based on us first finding that the trial court erred in calculating the duration of the marriage. As discussed in the second assignment of error, the trial court did not so err.

**{¶47}** According to James, there was no evidence that the parties maintained a "higher end" standard of living during the marriage. This assertion is belied by the record, and the trial court was well within its discretion in making this determination.

**{¶48}** James also contests the trial court's analysis of the parties' assets and liabilities. James focuses on the trial court's observation that James has a house and Susan does not. James argues that the trial court failed to consider that her separate property interests and the funds she received from the division of the marital estate would enable her to buy a house. This argument takes the trial court's finding out of context. The trial court was not considering whether Susan would be able to afford to buy a home following the divorce. Rather, in analyzing assets and liabilities, the trial court was taking into account that James would have the asset of the marital home and that Susan would not have that asset. This finding was supported by the record.

**{¶49}** Finally, James asserts that there is no evidence that the trial court accounted for the 15 months that James paid temporary support while the magistrate was writing its decision. We disagree. The magistrate's recommendation was that James pay spousal support of $5,000 per month for 20-months and that James pay $10,000 from each quarterly distribution for six consecutive periodic distributions. In contrast, the trial

court's spousal support award was only $5,000 per month for 15 months and did not include the quarterly distributions recommended by the magistrate. We can infer from this lower award that the trial court was accounting for the lag time between the end of trial and the filing of the magistrate's decision. The trial court properly considered the statutory factors in entering its spousal support award, and there was no abuse of discretion. We overrule the third assignment of error.

### *Temporary Support*

{¶50} In his fourth assignment of error, James asserts that the trial court erred and/or abused its discretion by failing to credit him with the direct payments he made to Susan prior to the issuance of the temporary support order. James fails to cite to any legal authority in support of his position. Because James has failed to properly support his argument, we decline to address this assignment of error. *See, e.g., Thornhill*, 8th Dist. Cuyahoga No. 92913, 2009-Ohio-5569, ¶ 11, citing App.R. 16(A)(7) (declining to address assignment of error where party fails to support argument with citation to legal authority).

{¶51} In his twelfth assignment of error, James argues that the trial court erred and/or abused its discretion by denying his motions to terminate spousal support and to modify temporary support without first providing a hearing. Loc.R. 19 of the Court of Common Pleas, Cuyahoga County, Domestic Relations Division contemplates that a trial court will conduct a hearing before modifying a support obligation, but failure to conduct the hearing does not constitute reversible error, unless

the appellant demonstrates prejudice. *Millstein v. Millstein*, 8th Dist. Cuyahoga Nos. 79617, 79754, 80184, 80185, 80186, 80187, 80188, and 80963, 2002-Ohio-4783, ¶ 32-37.

**{¶52}** James fails to satisfy his burden of establishing that he was prejudiced. In his brief, James generally asserts that he was prejudiced "given the multitude of changed circumstances that occurred during the 22 month delay between the conclusion of trial and the issuance of the Judgment Entry of Divorce." Appellant Br. at 39. But he does not specify even one example of a circumstance that changed during the relevant time period. James cannot satisfy his burden by making sweeping, unsupported assertions. Because James has failed to establish prejudice, we overrule the assignment of error.

### *Child Support*

**{¶53}** In his tenth assignment of error, James asserts that the trial court erred and/or abused its discretion by ordering an upward deviation of child support, in determining Susan's income for child support purposes, and by awarding Susan the tax exemption for the minor child.[4] For the reasons that follow, the assignment of error is overruled.

**{¶54}** We apply abuse of discretion review in matters related to child support. *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 87. This standard also applies to a trial court's determination of which parent may claim a child as

---

[4]Although the assignment of error refers to the trial court's determination of Susan's income for purposes of child support, James's brief does not make any further argument on this point. Accordingly, our analysis is focused only on the upward deviation and the tax exemption.

a dependent for federal income tax purposes. *Zeitoun v. Zeitoun*, 8th Dist. Cuyahoga No. 99776, 2013-Ohio-5586, ¶ 14.

**{¶55}** We first address James's argument regarding the upward deviation. In general, when calculating a child support, there is a rebuttable presumption that the correct figure is arrived at by using the child support guidelines and worksheet. *Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 49, citing R.C. 3119.03. But when the parents' income exceeds $150,000, R.C. 3119.04(B) "'leaves the determination entirely to the court's discretion.'" *Id.* quoting *Brownlee v. Brownlee*, 8th Dist. Cuyahoga Nos. 97037 and 97105, 2012-Ohio-1539. We have explained:

> R.C. 3119.04(B) expressly prohibits a trial court from awarding less than the amount computed under the basic child support schedule and applicable worksheet corresponding to a combined gross income of $150,000 unless the court finds "it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount." This court has consistently held that in determining child support obligations pursuant to R.C. 3119.04, trial courts must proceed on a case-by-case basis and generally do not have to state reasons for doing so. *Keating v. Keating*, 8th Dist. No. 90611, 2008-Ohio-5345, ¶ 84. *Further, "the statute does not require any explanation of its decision unless it awards less than the amount awarded for combined incomes of $150,000."*

(Emphasis added.) *Brownlee* at ¶ 26, quoting *Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, ¶ 54.

**{¶56}** In the instant case, the trial court used the applicable worksheet to determine the actual annual child support obligation, and determined that an upward deviation was warranted because the actual annual child support obligation would be "unjust," "inappropriate," and "not * * * in the best interest of the minor child." The trial court

ordered that James pay child support in the amount of $2,000 per month if James provided the minor child with health insurance. If James did not provide health insurance, he was ordered to pay $2,000.00 per month in child support, and an additional $93.67 as cash medical support.

**{¶57}** James asserts that the trial court failed to make specific findings as to why an upward deviation was warranted and argues that the trial court's findings were not supported by the evidence. Not so. Although the trial court was not required to explain its reasons for an upward deviation, it did set forth a number of justifications, including the high combined income of the parents; the substantial disparity of income between the parties and their households; as well as the fact that the parties had a high standard of living during the marriage and the child would have enjoyed a high standard of living had the parties remained married to each other. The trial court did not abuse its discretion in employing an upward deviation.

**{¶58}** We also reject James's argument regarding the tax exemption. Under R.C. 3119.82, "whenever a court issues * * * a court child support order, it shall designate which parent may claim the children * * * as dependents for federal income tax purposes * * * ." If the parties do not agree as to which parent should claim the child, the trial court may permit the nonresidential parent to claim him if it determines "that this furthers the best interest of the children." R.C. 3119.82. It follows that "'the crux of the issue is the best interest of the child.'" *Branden v. Branden*, 8th Dist. Cuyahoga No. 91453,

2009-Ohio-866, ¶ 36, quoting *Foster v. Foster*, 6th Dist. Sandusky No. S-03-037, 2004-Ohio-3905.

{¶59} To determine the best interest of the child, the trial court is required to consider a number of factors:

> any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

R.C. 3119.82. Although the trial court "'does not need to state a basis for allocating the exemption, the record does need to include financial data in relation to the above factors to support the trial court's decision.'" *Branden* at

¶ 36, quoting *Ankney v. Bonos*, 9th Dist. Summit No. 23178, 2006-Ohio-6009, overruled on other grounds.

{¶60} In the instant case, the trial court stated that it considered the factors set forth in R.C. 3119.82, and then it allocated the tax exemption to Susan. James does not assert that the record is devoid of the financial data that the trial court would need in order to consider the statutory factors. Rather, he argues that the trial court failed to issue findings of fact and conclusions of law on this issue. But the trial court was not required to do so, and so this argument lacks merit. James has failed to demonstrate that the trial court abused its discretion in its child-support award or in its decision to allocate the tax exemption to Susan. Accordingly, we overrule the tenth assignment of error.

### *Expert Evidence*

{¶61} In his ninth assignment of error, James argues that the trial court erred and/or abused its discretion by failing to exclude Susan's expert, Terri A. Lastovka. We overrule the assignment of error.

{¶62} "'A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion.'" *Chattree v. Chattree*, 8th Dist. Cuyahoga No. 99337, 2014-Ohio-489, ¶ 45, quoting *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 57.   Evid.R. 702 governs the admissibility of expert testimony.   *Chattree* at ¶ 46.   Under the rule, an expert's testimony must be "based on reliable, scientific, technical, or other specialized information."   Evid.R. 702(C).

{¶63} James makes a number of arguments on appeal, none of which is persuasive.   First, James alleges that Lastovka is not an expert in retirement benefits and, therefore, her expert report should have been stricken from the record.   James also argues that Susan failed to lay the proper foundation for Lastovka's expert-witness testimony and that Susan failed to demonstrate that Lastovka's reasoning or methodology underlying the testimony was valid and reliable. But James, once again, fails to cite to the record in support of his arguments as is required under App.R. 16(A)(7).   Consequently, we will not consider these arguments.   *See, e.g., Calhoun*, 8th Dist. Cuyahoga No. 93369, 2010-Ohio-2347, at ¶ 30.

{¶64} James does cite to the record once in support of his argument that Lastovka's report is not credible and contains many errors and inaccuracies.   But the part of the record that James cites to is wholly unrelated to Lastovka or to her expert report. "This court is under no duty to hunt and peck around the record to find [a] phrase: It is appellant's duty to properly cite the alleged error in the record."   *State v. Axson*, 8th Dist.

Cuyahoga No. 81231, 2003-Ohio-2182, ¶ 91, citing App.R. 16(A)(7), reversed on other grounds. The assignment of error is overruled.

### *Attorney Fees*

**{¶65}** In his eleventh assignment of error, James asserts that the trial court erred and/or abused its discretion by ordering him to pay $35,000 to Susan for her attorney fees and in not ordering said fees as additional spousal support for Susan. We apply an abuse of discretion standard of review on the trial court's decision to grant attorney fees. *Dureiko v. Dureiko*, 8th Dist. Cuyahoga No. 94393, 2010-Ohio-5599, ¶ 26.

**{¶66}** R.C. 3105.73 governs the award of attorney fees in divorce cases and states in pertinent part:

> (A) In an action for divorce * * * or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.
>
> * * *
>
> (D) Nothing in this section prevents an award of attorney's [sic] fees and litigation expenses from being designated as spousal support, as defined in section 3105.18 of the Revised Code.

**{¶67}** In the instant case, the trial court considered the factors set forth in R.C. 3105.73 and concluded that it was reasonable to award Susan $35,000 in attorney fees. The trial court found that James's repeated failures to comply with discovery requests had driven up Susan's attorney fees. The trial court also noted an incident where James's counsel kept the magistrate and opposing counsel waiting for 50 minutes due to his

non-timely appearance. The trial court determined that all of the legal services rendered by Susan's attorney were necessary and that the amount of time expended on those services was fully compensable. Finally, the trial court noted that after the division of the marital property and the award of spousal support, Susan would not have the financial ability to pay all of her own attorney fees and that James would have the ability to contribute to those fees. The trial court found that the $35,000 award was equitable, especially considering the large disparity in the parties' incomes. The trial court did not abuse its discretion in awarding attorney fees to Susan, because it considered the relevant statutory factors and supported the award with record evidence.

{¶68} James does not argue that the amount of the award is unreasonable; rather, he asserts that the trial court should not have ordered any award whatsoever. James does not deny that he repeatedly failed to comply with discovery requests, nor does he deny the disparity in income between himself and Susan. James instead focuses on Susan's alleged economic misconduct. As discussed earlier, the trial court did not abuse its discretion in determining that Susan had not engaged in economic misconduct, and so James argument here is equally unavailing. James also implies that, if the trial court's award is upheld, the award should be designated as spousal support. But while R.C. 3105.73(D) permits the trial court to make such a designation, it does not require it. The trial court did not abuse its discretion, and we overrule the assignment of error.

### *Injunctive Relief*

**{¶69}**  In his thirteenth assignment of error, James argues that the trial court erred and/or abused its discretion by granting prospective injunctive relief.  Specifically, James argues that the trial court erred in ordering that a restraining order issued against Deloitte Consulting, L.L.P. would remain in effect.    This argument lacks merit.

**{¶70}** The trial court had authority to grant a temporary restraining order in this case under Civ.R. 75(I)(2):

> When it is made to appear to the court by affidavit of a party sworn to absolutely that a party is about to dispose of or encumber property, or any part thereof of property, so as to defeat another party in obtaining an equitable division of marital property, a distributive award, or spousal or other support * * * the court may allow a temporary restraining order, with or without bond, to prevent that action. A temporary restraining order may be issued without notice and shall remain in force during the pendency of the action unless the court or magistrate otherwise orders.

Over the course of the proceedings, several restraining orders were put into effect.    In the divorce decree, the trial court dissolved all previous restraining orders except for one:

> IT IS ORDERED, ADJUDGED AND DECREED that all restraining orders previously issued by this Court are hereby dissolved and set aside except for any restraining order issued against Deloitte Consulting LLP which shall remain in full force and effect.

James argues that the trial court lacked the authority to continue the restraining order against Deloitte Consulting.

**{¶71}** In a domestic relations action, a temporary restraining order merges within the final decree, and the right to enforce the order does not extend beyond the decree, unless it has been reduced to a separate judgment or unless it has been considered by the trial court and specifically referred to within the decree.  *See O'Brien*, 8th Dist.

Cuyahoga No. 89615, 2008-Ohio-1098, at ¶ 83-88. And under Civ.R. 75(J), the parties can invoke the continuing jurisdiction of the court. *Dzina v. Celebrezze*, 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶ 15 ("'[T]he continuing jurisdiction of a court that issues a domestic relations decree may be invoked by the filing of any motion by a party.'"), quoting *State ex rel. Soukup v. Celebrezze*, 83 Ohio St.3d 549, 551, 700 N.E.2d 1278 (1998).

{¶72} Here, the trial court considered the restraining order against Deloitte Consulting, L.L.P. and specifically referred to it within the decree. And the parties can revisit the injunction at a later time as the trial court retained jurisdiction over the matter. We overrule the assignment of error.

{¶73} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
TIM McCORMACK, J., CONCUR