[Cite as *Frankart v. Frankart*, 2024-Ohio-4963.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

JULIA M. FRANKART,

    PLAINTIFF-APPELLEE,

  v.

RAYMOND E. FRANKART,

    DEFENDANT-APPELLANT.

CASE NO. 5-24-04

O P I N I O N

Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2021 DR 357

Judgment Affirmed

Date of Decision: October 15, 2024

APPEARANCES:

    *Drew A. Wortman* for Appellant

    *Craig M. Witherell* for Appellee

**WALDICK, J.**

{¶1} Defendant-appellant, Raymond E. Frankart ("Ray"), brings this appeal from the January 2, 2024 judgment of the Hancock County Common Pleas Court, Domestic Relations Division, awarding plaintiff-appellee, Julia M. Frankart ("Julia"), spousal support and child support in the parties' final divorce decree. On appeal, Ray argues that the trial court erred by awarding Julia spousal support because, he claims, the evidence showed that he actually earned less than Julia. He also argues that the trial court erred by not retaining jurisdiction over spousal support, and he argues that the trial court erred in its calculation of child support. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} Ray and Julia were married in June of 1992. They had two children together. One child emancipated prior to the parties filing for divorce.

{¶3} On September 9, 2021, Julia filed a complaint for divorce. Ray subsequently filed an answer and counterclaim, also seeking a divorce.

{¶4} As the case progressed, the parties came to an agreement on numerous issues, including shared parenting of their minor child and the division of nearly all of their assets. However, the parties could not reach an agreement on spousal support, the calculation of child support, and responsibility for outstanding debts on three business credit accounts.

{¶5} A hearing was held before a magistrate on the unresolved issues on January 23, 2023, and February 27, 2023. Both parties testified at the hearing and numerous exhibits were entered into evidence detailing, *inter alia*, the parties' earnings.

{¶6} From 2007 to 2022, the parties were partners in a successful real estate business, operating a Remax franchise. Julia served as the operations manager of the business and Ray served as the managing broker. However, Julia also took care of the parties' children. The parties lived what they described as a "very good" lifestyle, taking numerous vacations, owning a second home on Lake Erie, and owning a substantial amount of personal property. They also had numerous bank accounts, investment accounts, and retirement accounts.

{¶7} Despite being partners in the business, the parties' earnings history taken from their tax records reflects a significant disparity. Julia had no taxable earnings from 2001 through 2015. She had little earnings in 2016, and her earnings were "35-37.5%" of the parties combined taxable earnings from 2017 through 2020.

{¶8} For example, according to joint trial exhibits, from 2016 through September of 2022, Ray earned over $1,600,000 total in real estate commissions. He had a high year of $305,134 in commissions in 2021, and a low year of $136,197 in commissions in 2020. (Joint Exs. XIV; XV). By contrast, during the same time period, Julia earned *a total* of just over $125,000 in commissions. *See* (Joint Exs. X-XV). She had a high year of $71,762.04 in 2020, and low years of $0 in 2016 and

2017.[1] Further, Julia earned a total amount of taxable social security wages of just over $115,000 from 2001-2021, while Ray earned over $1,000,000 in taxable social security wages during the same period. (Joint Exs. VIII, IX).

{¶9} In September of 2022, the parties' franchise agreement with Remax expired. Ray started a new real estate partnership, which included a handful of individuals from the parties' prior business. He also took "seven or eight" property listings from the prior business. (Feb. 27, 2023, Tr. At 36). Julia took a job at Marathon earlier in 2022, earning a set salary of $90,000 per year. For purposes of calculating child support for temporary orders, the parties had previously agreed that Ray's actual or potential income was $280,000 and Julia's was $90,000.[2] (Doc. No. 34). Through the first eight months of 2022, Ray earned over $206,000 in commissions, while Julia earned $16,600, separate from her new salary with Marathon. (Joint Ex. XVII).

{¶10} The magistrate reviewed the evidence presented and issued a 28-page decision on June 21, 2023. The magistrate discussed the parties' earnings during their lengthy marriage and how that impacted their retirement/social security. The magistrate also discussed the parties' future earnings, factoring-in that Julia would be the primary caretaker of the parties' minor child. The magistrate ultimately determined that Ray should pay Julia a total of $600,000 in spousal support in

---

[1] We are aware that commissions earned does not directly reflect gross income; however, these numbers are used as an example of the earning disparity between the parties in their partnership.
[2] The joint tax return from 2021 contained in the record shows taxable income of $362,810.

installments of $5,000 per month for 10 years. The obligation could be fulfilled earlier if the amount was paid-in-full. The magistrate also recommended that the trial court not retain jurisdiction to modify the amount or duration of spousal support. In addition, Ray was ordered to pay $704.04 per month, plus processing fees, in child support.

{¶11} Ray filed multiple objections to the magistrate's decision. Specifically, he objected to paying spousal support, arguing that the evidence showed that Julia's income was higher than his, particularly since Ray was starting a new business toward the end of 2022. He also argued, *inter alia*, that the magistrate erred in its calculation of child support.

{¶12} On December 14, 2023, the trial court filed a decision overruling all but one of Ray's objections.[3] In its decision, the trial court independently analyzed Ray's objections related to spousal support and child support and overruled them.

{¶13} On January 2, 2024, the trial court issued its final decree of divorce. It is from this judgment that Ray appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**The Magistrate erred in fashioning a spousal support award requiring the appellant to pay the appellee. Appellant asserts that this is error because evidence produced at trial showed Appellee's income was higher than Appellant's income.**

---

[3] The sustained objection has no relevance to this appeal.

**Second Assignment of Error**

**The Magistrate erred in finding that Appellee's retirement was the reason spousal support should be awarded.**

**Third Assignment of Error**

**The Magistrate erred in the calculation of child support, and in determining each party's respective income.**

**Fourth Assignment of Error**

**The Magistrate erred in making the spousal support award non-modifiable.**

{¶14} For ease of discussion, we elect to address the first and second assignments of error together.

*First and Second Assignments of Error*

{¶15} In Ray's first assignment of error, he argues that the trial court erred by ordering him to pay spousal support to Julia. In his second assignment of error, he argues that the magistrate and the trial court improperly determined that Ray should pay Julia spousal support based primarily on the disparity in the parties' retirement funds.

Standard of Review

{¶16} Trial courts have broad discretion concerning an award of spousal support. *Schwieterman v. Schwieterman*, 2020-Ohio-4881, ¶ 69. Therefore, a trial

court's decision related to spousal support will not be reversed absent an abuse of discretion. *Id.*

## Relevant Authority

{¶17} Revised Code 3105.18 governs the award of spousal support in divorce cases. "'[S]pousal' support means any payment or payments to be made to a spouse or former spouse . . . that is both for sustenance and for support of the spouse or former spouse." R.C. 3105.18(A). "In divorce . . . proceedings, upon the request of either party and after the court determines the division or disbursement of property . . ., the court of common pleas may award reasonable spousal support to either party." R.C. 3105.18(B).

{¶18} Importantly, an award of spousal support is not based solely on the need of a party. *Schwieterman* at ¶ 69. An award of spousal support must be balanced against the obligor's ability to pay. *Id.*

{¶19} In order to determine whether spousal support is appropriate and reasonable, R.C. 3105.18(C)(1) provides a list of factors that a trial court must consider. These factors read as follows:

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

Analysis

**{¶20}** The magistrate in this case discussed spousal support in two separate portions of her lengthy decision: pages 3-6 and pages 9-16. After the magistrate awarded spousal support to Julia, Ray objected to the magistrate's decision, making essentially the same arguments that he does in the instant appeal. The trial court reviewed Ray's objections and rejected his arguments in the following analysis:

> [Ray] characterizes his current income as far below that of Plaintiff. He explains over two pages about his income and his new business venture, which currently operates at a loss. . . . Defendant testified that in this new venture, he did not generate any income and had a negative balance sheet. . . . He did testify that his business was almost to a break-even point, but was not quite there yet. [citation omitted.] . . .
>
> The Court first addresses [Ray's] contention that the Magistrate solely or primarily considered income in making her Decision. To the contrary, the Magistrate considered the issue of spousal support in great detail. Her Decision spans approximately seven pages on this single issue. . . . In that span, she properly considered the statutory factors set forth in R.C. § 3105.18(A) and other relevant sections related to spousal support. . . .
>
> As [Julia] addresses, the Magistrate considered not only the current incomes of the parties, but the historic disparity of income between them. [Ray]'s income always far exceeded [Julia]'s during the course of their thirty-year marriage. As part of the divorce proceedings, [Ray] refused offers to sell the original real estate business. . . . [Ray] then chose to start a new business venture which requires substantial investments and an understanding that the business will likely not be profitable until several months or years later. The magistrate clearly addressed this and other issues in her Decision. . . .
>
> The Magistrate addressed the parties' previous lifestyle, which she characterized as "moderately lavish." . . . She also considered each

party's age, working ability, and future likely incomes. She addressed their educations and potentials. . . .

In Objection 2, [Ray] focuses on the Magistrate's statement that "the most compelling factor in support of [Julia's] request for spousal support is the difference between the retirement resources for Plaintiff and Defendant and the lost income production by [Julia] during the marriage." . . . [Ray's] arguments would suggest that retirement was nearly the sole basis on which the Magistrate based her Decision on this issue. The Magistrate does focus a great deal on the disparate retirement accounts for each party, but in this Court's opinion, does so correctly. This is a proper statutory factor under R.C. § 3105.18(C)(1). [Ray] appears [to] ignore[] the latter part of the sentence, which states the Magistrate also considered [Julia's] "lost income production" for nearly thirty years. . . .

[The Magistrate] further focused on the individual facts relevant to this argument. She clearly considered [Julia's] lack of social security earnings for many years. . . . The Magistrate addressed the significant gap in the parties' retirement assets. [Ray] acknowledges this gap but argues that this "gap is already closing." . . . Both parties are currently employed and will hereafter continue to accumulate their own retirement earnings, but the Magistrate's Decision properly utilizes spousal support to help equalize the discrepancies between the two parties. She even addressed [Ray]'s arguments that his income was less than [Julia] argued, but ultimately found, based on all of the evidence, that his income was sufficient for the granted spousal support award. In its independent review of the evidence, this Court agrees with the Magistrate's reasoning and factual findings.

(Doc. No. 122).

{¶21} Ray continues to argue to this Court that the magistrate and the trial court did not properly consider how his income had changed when he began his new partnership. However, the magistrate and the trial court's analysis reflect otherwise.

{¶22} Ray contends that following the closure of the parties' Remax franchise in September of 2022, the parties' earnings changed dramatically. He

-10-

argues that Julia was making $90,000 per year in her new job with Marathon, while at the time of the final hearing, Ray's business was not yet turning a profit. Ray testified that he thought he would be turning a profit within eighteen months, but at the time of the final hearing he was using his savings to help pay business expenses. Ray argues that there was no evidence that he was earning anywhere near the $280,000 amount that was used for his income for spousal support purposes in 2022 or 2023. Further, he contends that the magistrate's spousal support award was based almost entirely on the parties' disparate retirement earnings.

{¶23} Ray wants his future income for spousal support purposes to be based largely on his 2022 income. During the final quarter of 2022, Ray was putting money into a new business with a partner. The business already had five employees, not including the two partners, and Ray testified that he expected to be turning a profit within eighteen months. Further, Ray noted that he was a real estate broker, whereas Julia was not, permitting him to own the business and oversee other agents.[4] In addition, Ray noted in his testimony that during 2022, some of his large clients were not sending him any business (such as Marathon), but he was hopeful that would change in the near future. By all accounts, Ray's income in 2022 appears to be an extreme outlier as he got his new real estate business off the ground.

{¶24} Moreover, the record is clear that both the magistrate and the trial court considered the spousal support factors contained in R.C. 3105.18(C)(1). The parties'

---

[4] Ray specifically testified that as a managing broker he can own the business and run the business.

current and past incomes were considered as were the parties' earning abilities, their ages and conditions, their retirements, the duration of the marriage, their standard of living, their education, their assets and liabilities, and Julia's lost income due to parenting the parties' minor child.

{¶25} Further, we also reject Ray's argument that the spousal support award was based almost solely on the parties' retirement income disparity, because the magistrate and the trial court clearly considered the requisite statutory factors in addition to retirement. Regardless, retirement income is a proper factor for the trial court to consider when fashioning a spousal support award, and here Ray had substantially greater social security earnings, and he also received a military benefit from being in the Navy.[5]

{¶26} Given all the evidence that was presented and considered, we do not find that the trial court abused its discretion by determining that Julia should be awarded spousal support. *Brown v. Brown*, 2014-Ohio-2402, ¶ 39 (8th Dist.) (holding the trial court's consideration of all the factors in R.C. 3105.18(C)(1) supported spousal support award). Therefore, Ray's first and second assignments of error are overruled.

*Third Assignment of Error*

In his third assignment of error, Ray argues that the magistrate and the trial court erred in its child support calculation, particularly in determining each party's respective income.

---

[5] Ray received $1,118.44 as "service-connected disability compensation" per month.

-12-

Standard of Review

**{¶27}** "Matters involving child support are reviewed under an abuse-of-discretion standard." *Morrow v. Becker*, 2013-Ohio-4542, ¶ 9.

Analysis

**{¶28}** After reciting the relevant legal authority a trial court is required to consider when determining an award of child support in his brief, Ray "reincorporates the arguments" he made in the first assignment of error inasmuch as they relate to his third assignment of error. More specifically, he contends that "once the record is reviewed, a proper finding of each parties' income will be made and then a child support worksheet should be ran again." (Appt.'s Br. At 10). This is the exact same argument he made to the trial court when he objected to the magistrate's decision on child support, and the trial court rejected Ray's argument, holding:

> [T]he magistrate did not err in her calculation of the parties' respective incomes. This includes determinations related to [Julia's] bonus as unexpected income and her statements that she is not continuing her real estate practice at this time, as she is too busy being a mom and working full time. . . .

(Doc. No. 122).

**{¶29}** Similar to the trial court, we have already rejected the arguments Ray made in his first assignment of error that he attempts to apply here as well. We emphasize that Ray's income for child support purposes was based on documented

income of $181,021 in 2021. Ray cites to no legal authority showing how a trial court abuses its discretion by determining income based on actual documented income.

**{¶30}** As to Julia's income, the trial court used Julia's $90,000 salary and added the $60,000 of spousal support to reach an income of $150,000. We find no abuse of discretion by using this amount. Given the record before us, we do not find that the trial court abused its discretion related to child support. Therefore, Ray's third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶31}** In Ray's fourth assignment of error, he argues that the magistrate and the trial court erred by making the spousal support award non-modifiable. However, Ray did not object to the magistrate's decision on this issue.

Relevant Authority

**{¶32}** Civil Rule 53(D)(3)(b)(ii) governs the filing of objections to a magistrate's decision and provides that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Except for a claim of plain error, a party is prohibited from assigning as error on appeal the trial court's adoption of any finding of fact or legal conclusion, unless the party has objected to that finding or conclusion of the trial court. Civ.R. 53(D)(3)(b)(iv).

Analysis

**{¶33}** Ray filed four specific objections to the magistrate's decision. He challenged the income the magistrate applied for spousal support purposes; he challenged the magistrate's purported reliance on the parties' disparate retirement funds as reasoning supporting the spousal support award; he challenged the magistrate's determination that Ray should have to pay spousal support even after Julia died; and he challenged the calculation of child support. Ray's challenge to having to pay child support after Julia's death was sustained by the trial court. Ray did not file a specific objection arguing that the magistrate erred by making the spousal support award non-modifiable. Thus he has waived all but plain error.

**{¶34}** The plain error doctrine is not favored in civil appeals and "may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson,* 1997–Ohio–401, syllabus.

**{¶35}** Here, in reviewing the matter for plain error, we emphasize that R.C. 3105.18(E) *permits* a court to retain jurisdiction to modify a spousal support award, but the statute does not *require* the trial court to retain jurisdiction. Ray cites no legal authority establishing that in these circumstances that the trial court *had* to

retain jurisdiction to modify spousal support, thus we can find no plain error here. Therefore, his fourth assignment of error is overruled.

*Conclusion*

{¶36} Having found no error prejudicial to Ray in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Hancock County Common Pleas Court, Domestic Relations Division, is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

**/jlm**